[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10681

_____

D.C. Docket No. 5:10-cv-00489-MTT

MARION WILSON, JR.,

Petitioner-Appellant,

versus

WARDEN, GEORGIA DIAGNOSTIC PRISON,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(August 23, 2016)

Before ED CARNES, Chief Judge, TJOFLAT, HULL, MARCUS, WILSON, WILLIAM PRYOR, MARTIN, JORDAN, ROSENBAUM, JULIE CARNES, and JILL PRYOR, Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

This appeal requires us to decide whether, when a federal court reviews a

state prisoner's petition for a writ of habeas corpus, it must "look through" a

summary decision on the merits by a state appellate court to review the last reasoned decision. Marion Wilson, Jr., a Georgia prisoner sentenced to death for the murder of Donovan Parks in 1996, filed a petition for a writ of habeas corpus in the Superior Court of Butts County, Georgia. That court denied his petition in a written opinion. Wilson sought to appeal that decision, and the Supreme Court of Georgia summarily denied his application for a certificate of probable cause to appeal. The district court then denied Wilson's federal petition for a writ of habeas corpus, and after reviewing the one-sentence decision of the Georgia Supreme Court, we affirmed. *Wilson v. Warden, Ga. Diagnostic Prison*, 774 F.3d 671, 681 (11th Cir. 2014), *reh'g en banc granted, op. vacated*, No. 14-10681 (11th Cir. July 30, 2015).

We vacated our panel opinion to determine en banc whether federal courts must "look through" the summary denial by the Supreme Court of Georgia and review the reasoning of the Superior Court of Butts County. We conclude that federal courts need not "look through" a summary decision on the merits to review the reasoning of the lower state court. We remand to the panel all outstanding issues in this appeal.

## I. BACKGROUND

In 1996, Marion Wilson, Jr., and Robert Earl Butts killed Donovan Parks in Milledgeville, Georgia. *Wilson v. State*, 525 S.E.2d 339, 343 (Ga. 1999). The two

2

men approached Parks in the parking lot of a Wal-Mart store and asked him for a ride. Minutes later, Parks's body was found on a nearby residential street.

Officers arrested Wilson. They searched Wilson's residence and found a "sawed-off shotgun loaded with the type of ammunition used to kill Parks." *Id.* Wilson told the officers that Butts had shot Parks with a sawed-off shotgun. A jury convicted Wilson of malice murder, felony murder, armed robbery, hijacking a motor vehicle, possession of a firearm during the commission of a crime, and possession of a sawed-off shotgun. *Id.* at 342–43. At sentencing, trial counsel argued that Wilson was not the triggerman and presented evidence of his difficult childhood. Georgia presented evidence of Wilson's extensive criminal history and gang activity. The trial court sentenced Wilson to death, and the Supreme Court of Georgia affirmed his convictions and sentence on direct appeal. *Id.* at 343.

Wilson filed a state petition for a writ of habeas corpus in the Superior Court of Butts County, Georgia, in which he argued that his trial counsel rendered ineffective assistance in his investigation of mitigation evidence for the penalty phase of Wilson's trial. At an evidentiary hearing, Wilson introduced lay testimony that he argued should have been used as evidence of his difficult childhood. He also introduced expert testimony that he argued could have explained his poor judgment skills.

3

The superior court denied Wilson's petition in a written order. It examined the lay testimony and found it largely cumulative of other evidence at trial or inadmissible on evidentiary grounds. It found that the expert testimony would not have changed the outcome of the trial. For these reasons, it ruled that trial counsel's performance was not deficient and, alternatively, that Wilson suffered no prejudice. Wilson filed an application for a certificate of probable cause to appeal, which the Georgia Supreme Court summarily denied in a one-sentence order.

Wilson then filed a federal petition for a writ of habeas corpus, and the district court denied him relief. It ruled that the state trial court reasonably applied clearly established federal law. But the district court granted Wilson a certificate of appealability on the issue of the effectiveness of his trial counsel at sentencing.

A panel of this Court affirmed. *Wilson*, 774 F.3d at 681. As an initial matter, the panel reasoned that "the one-line decision of the Supreme Court of Georgia denying Wilson's certificate of probable cause is the relevant state-court decision for our review because it is the final decision 'on the merits.'" *Id.* at 678 (quoting *Newland v. Hall*, 527 F.3d 1162, 1199 (11th Cir. 2008)). Under the test announced in *Harrington v. Richter*, 562 U.S. 86 (2011), the panel asked "whether there was any 'reasonable basis for the [Supreme Court of Georgia] to deny relief.'" *Wilson*, 774 F.3d at 678 (alteration in original) (quoting *Richter*, 562 U.S. at 98). The panel concluded that the Supreme Court of Georgia "could have looked at the overall

4

mix of evidence, aggravating and mitigating, old and new, and reasonably determined that a jury would have still sentenced Wilson to death." *Id.* at 680. The panel stated that the lay testimony "presented a 'double-edged sword,'" *id.* at 679 (quoting *Evans v. Sec'y, Dep't of Corr.*, 703 F.3d 1316, 1324 (11th Cir. 2013)), and was "largely cumulative" of evidence presented to the jury, *id.* (quoting *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1260–61 (11th Cir. 2012)). The panel stated that the Georgia Supreme Court could have found the new expert testimony to be unreliable and in conflict with other evidence. *Id.* at 680. For these reasons, the panel concluded that the decision of the Supreme Court of Georgia denying Wilson's petition was neither "contrary to, [nor] involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* at 681 (quoting 28 U.S.C. § 2254(d)(1)).

In his petition for rehearing en banc, Wilson argued that the panel erred when it reviewed the summary denial of his petition for a certificate of probable cause to appeal. Wilson argued that, under the decision in *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), the panel should have instead examined the last reasoned decision by a state court. We ordered Georgia to respond to the petition.

In its response to Wilson's petition, Georgia argued that a court should "look through a summary denial to a reasoned decision only to determine whether the state appellate court affirmed on procedural grounds or on the merits." Georgia

5

defended the panel decision that, under *Richter*, a federal court must defer to the summary denial of the Georgia Supreme Court by asking "what argument or theories could have supported the affirmance." Georgia urged this Court to deny Wilson's petition.

On July 30, 2015, we vacated the panel opinion and granted Wilson's petition for rehearing en banc. We directed the parties to brief the following issue: "Is a federal habeas court required to look through a state appellate court's summary decision that is an adjudication on the merits to the reasoning in a lower court decision when deciding whether the state appellate court's decision is entitled to deference under 28 U.S.C. § 2254(d)?"

Georgia then changed its position. In its en banc brief, Georgia argued that this Court should review the reasoned opinion of the superior court, not the summary denial by the Georgia Supreme Court.

To provide the Court with argument on both sides of the question, we appointed Adam Mortara as *amicus curiae* to argue that the question should be answered in the negative. We thank Mr. Mortara for his service to this Court on short notice and for his superb brief and oral argument in keeping with the highest tradition of the legal profession.

Wilson and Georgia also challenged our precedent that the denial of a certificate of probable cause by the Georgia Supreme Court is an adjudication on

6

the merits for the purposes of section 2254(d). *See Hittson v. GDCP Warden*, 759 F.3d 1210, 1231–32 (11th Cir. 2014). Because the answer to this preliminary question could make it unnecessary to decide the question we agreed to review, we ordered Wilson and Georgia to file supplemental briefs addressing whether the denial of an application for a certificate of probable cause by the Georgia Supreme Court is an adjudication on the merits.

## II. DISCUSSION

We divide our discussion in two parts. First, we discuss why the denial of a certificate of probable cause by the Georgia Supreme Court is an adjudication on the merits. Second, we explain why a federal court is not required to "look through" a summary decision of a state appellate court that is an adjudication on the merits to the reasoning in a lower court decision.

### A. The Denial of a Certificate of Probable Cause by the Georgia Supreme Court Is an Adjudication on the Merits.

The Antiterrorism and Effective Death Penalty Act of 1996 requires a federal court to deny an application for a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). When deciding that issue, we

7

review one decision: "the last state-court adjudication on the merits." *Greene v.*

*Fisher*, 132 S. Ct. 38, 45 (2011). The Supreme Court made this point clear in

*Greene v. Fisher*, when it held that the "clearly established Federal law" to be

applied is the law at the time of "the last state-court adjudication on the merits." *Id.*

Reading the text of section 2254(d), the Supreme Court explained, "The words 'the

adjudication' in the 'unless' clause obviously refer back to the 'adjudicat[ion] on

the merits,' and the phrase 'resulted in a decision' in the 'unless' clause obviously

refers to the decision produced *by that same adjudication on the merits*." *Id.*

(alteration in original) (quoting 28 U.S.C. § 2254(d)(1)).

When, as here, the Georgia Supreme Court summarily denies a certificate of

probable cause to appeal after a superior court has denied habeas relief on the

merits, the summary denial is an adjudication on the merits. In Georgia, a

petitioner must seek a certificate of probable cause from the Georgia Supreme

Court before he can appeal a denial of habeas relief. Ga. Code Ann. § 9-14-52(a).

Georgia Supreme Court Rule 36 states that, "[a] certificate of probable cause to

appeal a final judgment in a habeas corpus case involving a criminal conviction

will be issued *where there is arguable merit*, provided there has been compliance

with [Ga. Code Ann.] § 9-14-52(b)." Ga. Sup. Ct. R. 36 (emphasis added). Under

this rule, the Georgia Supreme Court reviews the merits of the appeal: that is, the

Georgia Supreme Court denies a properly filed application for a certificate of

8

probable cause only when it determines that the appeal lacks "arguable merit." *See*

*Foster v. Chatman*, 136 S. Ct. 1737, 1746 n.2 (2016). For this reason, the Supreme

Court of the United States recently determined that a summary denial of a

certificate of probable cause is a "decision on the merits" subject to its review on a

writ of certiorari. *Id*. For the same reason, the denial of a certificate of probable

cause is an adjudication on the merits under section 2254.

The Georgia Supreme Court does not avoid adjudicating a habeas appeal by

requiring the petitioner to seek a certificate of probable cause. The Georgia

Constitution vests the state supreme court with appellate jurisdiction over "[a]ll

habeas corpus cases." Ga. Const. Art. VI, § VI, ¶ III. In *Reed v. Hopper*, 219

S.E.2d 409 (Ga. 1975), the Georgia Supreme Court held that the 1975 Habeas

Corpus Act, which created the process for a certificate of probable cause to appeal,

satisfied the constitutional mandate of exercising appellate jurisdiction where the

Georgia Supreme Court "may refuse to entertain a habeas corpus appeal for lack of

probable cause." *Id*. at 411. The Georgia Supreme Court still passes on the merits

of every petition by either immediately ruling that an appeal lacks arguable merit

or by granting the certificate, conducting further review, and *then* ruling on the

merits. Georgia asserts that many denials of an application for a certificate of

probable cause are summary dispositions and that, when the Georgia Supreme

Court reviews a petitioner's claims after granting a certificate of probable cause,

9

the review is typically more comprehensive. But section 2254 does not require state courts to provide written opinions, *Richter*, 562 U.S. at 98, and it does not set a thoroughness standard, *see Johnson v. Williams*, 133 S. Ct. 1088, 1095–96 (2013). That the Georgia Supreme Court may choose to conduct a more probing review of appeals after granting a certificate of probable cause does not mean that a denial of a certificate of probable cause is not also on the merits. Indeed, in a recent summary denial of an application for a certificate of probable cause, the Georgia Supreme Court stated that it "fully considered [the petitioner's] application on the merits" and denied the application "as lacking arguable merit." *Lucas v. Chatman*, No. S16W1408 (Ga. Apr. 27, 2016).  For every application for a certificate of probable cause, the Georgia Supreme Court must satisfy itself that the petitioner's claims are either procedurally defaulted or meritless.

And, in fact, the Georgia Supreme Court thoroughly reviews the evidence and the petitioner's arguments before denying an application for a certificate of probable cause. The Georgia Supreme Court makes its decision with the aid of the complete record and transcript, which the clerk of the superior court is required to transfer to the clerk of the Supreme Court. *See* Ga. Code Ann. § 9-14-52(b). Although the Georgia Supreme Court frequently denies an application summarily, it sometimes writes lengthy opinions to explain why a prisoner's claims are without merit. *See, e.g.*, *Gibson v. Turpin*, 513 S.E.2d 186, 187 (Ga. 1999)

10

(denying prisoner's application for a certificate of probable cause in a twelve-page decision over a dissent because, among other reasons, his attorney's representation was not deficient). On numerous occasions, Justice Carley has dissented from a summary denial of a certificate of probable cause on the ground that the Georgia Supreme Court should not have "dispose[d] of the case on the merits" because the prisoner did not comply with the procedural requirements for seeking a certificate of probable cause. *Alderman v. Head*, 559 S.E.2d 72, 72 (Ga. 2002) (Carley, J., dissenting); *see also, e.g.*, *Colton v. Morgan*, 514 S.E.2d 822, 822 (Ga. 1999) (Carley, J., dissenting); *Hamm v. Johnson*, 514 S.E.2d 822, 822 (Ga. 1999) (Carley, J., dissenting); *Ferguson v. Hall*, 512 S.E.2d. 604, 604 (Ga. 1999) (Carley, J., dissenting). The Georgia Supreme Court clearly understands that a summary denial of a certificate of probable cause is a determination that a prisoner's claims lack merit. To contend that the denial is not an adjudication on the merits is to suggest that the elaborate procedures of the Georgia courts are a sham. We refuse to endorse that suggestion.

The courts of last resort in many other states provide a discretionary appeals process similar to certiorari review. For example, in granting or denying a writ, the Louisiana Supreme Court exercises its "sound judicial discretion" and considers a number of nonexhaustive factors including whether the appeal presents "a significant issue of law which has not been . . . resolved," the decision of the court

11

of appeal "will cause material injustice or significantly affect the public interest,"
or "the controlling precedents should be overruled or substantially modified." La.
Sup. Ct. R. 10(a). The rules in Illinois and Pennsylvania also provide for review in
the "sound judicial discretion" of the court, Ill. Sup. Ct. R. 315(a); Pa. R. App. P.
1114(a), and the rules in Massachusetts provide for review when it is in "the public
interest" or "the interests of justice," Mass. R. App. P. 27.1(e). These courts decide
whether to review an appeal based, at least in part, on considerations other than the
merits of the appeal. Unlike the Georgia Supreme Court, these state supreme courts
may deny an application to appeal a denial of collateral relief without determining
that the appeal lacks merit and, as a result, these denials are not adjudications on
the merits.

Georgia courts and practitioners sometimes refer to the process by which a
certificate of probable cause is reviewed as "discretionary," but they mean
something different from traditional certiorari review. Black's Law Dictionary
defines "discretionary review" as "[t]he form of appellate review that is not a
matter of right but that occurs only with the appellate court's permission." *Review*,
Black's Law Dictionary (10th ed. 2014). Georgia courts and practitioners use the
term "discretionary" to distinguish appeals requiring permission from appeals as of
right, not to describe a certiorari-type procedure. For example, a well-reputed
treatise of Georgia appellate practice notes that an application for leave to appeal a

12

final judgment under section 5-6-35 of the Georgia Code—which cannot be denied when there is "[r]eversible error," Ga. Sup. Ct. R. 34—"is widely referred to as 'discretionary review.'" Christopher J. McFadden et al., Ga. Appellate Practice with Forms § 13:1 (2015–16 ed. 2015). "[B]ut practitioners should not be led astray by the term. As understood by both appellate courts, there is no discretion to deny an application for 'discretionary review' when reversible error appears to exist." *Id.* (citing *Nw. Soc. & Civic Club, Inc. v. Franklin*, 583 S.E.2d 858 (Ga. 2003)). The authors anticipated that the term "discretionary review" may cause confusion and clarified that in Georgia "discretionary review" may still require an adjudication on the merits. The denial of an application for a certificate of probable cause is both discretionary, as the term is understood in Georgia law, and an "adjudicat[ion] on the merits" under section 2254.

In its supplemental brief, Georgia expressed concern that if a denial of a certificate of probable cause is an adjudication on the merits, a silent denial of a certificate of probable cause may eradicate a procedural bar relied on by a state court below, but *Ylst* prevents that result. The Supreme Court of the United States held in *Ylst* that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment . . . rest upon the same ground." *Ylst*, 501 U.S. at 803. If "the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision

13

rejecting the claim did not silently disregard that bar and consider the merits." *Id*.

A summary denial of a certificate of probable cause is not on the merits for any

claim that was procedurally barred below. Georgia's concern is unfounded.

The superior court denied Wilson's claims only on the merits. The summary

denial of Wilson's application for a certificate of probable cause by the Georgia

Supreme Court is the final state court adjudication on the merits. We must review

that latter decision.

### B.  Federal Courts Need Not "Look Through" a Summary Decision on the Merits to Review the Reasoning of the Lower State Court.

The deferential standard of section 2254(d) applies regardless of whether the

state court decision "is unaccompanied by an opinion explaining the reasons relief

has been denied." *Richter*, 562 U.S. at 98. When the last adjudication on the merits

provides a reasoned opinion, federal courts evaluate the opinion. 28 U.S.C.

2254(d); *see, e.g.*, *Porter v. McCollum*, 558 U.S. 30, 42–44 (2009). When the last

adjudication on the merits provides no reasoned opinion, federal courts review that

decision using the test announced in *Richter*. In *Richter*, an inmate filed a petition

for a writ of habeas corpus in the California Supreme Court, which summarily

denied the petition. *Richter*, 562 U.S. at 96. When the inmate filed a federal

petition for a writ of habeas corpus, the Supreme Court of the United States ruled

that, "[w]here a state court's decision is unaccompanied by an explanation," a

petitioner's burden under section 2254(d) is to "show[] there was no reasonable

14

basis for the state court to deny relief." *Id.* at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." *Id.* at 102. Under that test, Wilson must establish that there was no reasonable basis for the Georgia Supreme Court to deny his certificate of probable cause.

Wilson argues that *Richter* applies only when there is no reasoned decision from any state court. He argues that, when a previous state adjudication offered a reasoned opinion, *Ylst* requires federal courts to "look through" the summary denial and review that previous opinion under the standard outlined in section 2254. We disagree.

Nothing in the Act or *Richter* suggests that its reasoning is limited to the narrow subset of habeas petitions where there is no reasoned decision from any state court. Under section 2254(d), a federal court reviewing the judgment of a state court must first identify the last adjudication on the merits. It does not matter whether that adjudication provided a reasoned opinion because section 2254(d) "refers only to a 'decision'" and does not "requir[e] a statement of reasons." *Id.* at 98. The federal court then must review that decision deferentially. In *Richter*, the Supreme Court explained how to review a decision "unaccompanied by an

15

opinion." *Id*. There is no basis in the Act or *Richter* for two divergent analytical

modes—one when there is no previous reasoned decision below and another for

when there is.

*Ylst* involved the application of the doctrine of procedural default—a judge-

made doctrine, *see McQuiggin v. Perkins*, 133 S. Ct. 1924, 1937 (2013) (Scalia, J.,

dissenting)—in the review of state-court judgments that do not clearly state

whether they rest on procedural grounds or adjudicate the merits of a federal claim.

*See Ylst*, 501 U.S. at 802. Under the doctrine of procedural default, federal courts

do not review the merits of a state prisoner's federal claim if "a state-law default

prevent[ed] the state court from reaching the merits." *Id*. at 801; *see also*

*Wainwright v. Sykes*, 433 U.S. 72, 81, 87 (1977). In *Ylst*, an inmate in a California

prison appealed his conviction for murder on the ground that the state introduced

evidence obtained in violation of the Fifth and Fourteenth Amendments. 501 U.S.

at 799. The California appellate court ruled that the inmate procedurally defaulted

his federal claim because he raised it for the first time on appeal. *Id.* When the

inmate filed a petition for collateral relief in state court, the trial court and appellate

courts summarily denied relief. *Id.* at 800. The inmate then filed a federal petition

for a writ of habeas corpus, and the district court ruled that the "state procedural

default barred federal review." *Id.* The Supreme Court of the United States held

that, where "the last reasoned opinion on the claim explicitly imposes a procedural

16

default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits." *Id.* at 803. And if the last reasoned opinion of a state court adjudicated a federal claim, federal courts should presume that the later state decision affirming without explanation also adjudicated the merits of that claim. *Id.*

It makes sense to assume that a summary affirmance rests on the same *general* ground—that is, a procedural ground or on the merits—as the judgment under review. As the *Ylst* Court explained, it is "most improbable" that an "unexplained order leaving in effect a decision . . . that expressly relies upon procedural bar" actually "reject[ed] that bar and decid[ed] the federal question." *Id.* at 803–04. But it does not follow that a summary affirmance rests on the same *specific* reasons provided by the lower court.

The Supreme Court of the United States after all does not adopt the reasoning of a lower court when it issues a summary disposition. When the Court vacated the judgement of a three-judge district court after the district court erroneously interpreted a summary affirmance by the Supreme Court, Chief Justice Burger explained in a concurring opinion, "When we summarily affirm, without opinion, the judgment of a three-judge District Court we affirm the judgment but not necessarily the reasoning by which it was reached." *Fusari v. Steinberg*, 419 U.S. 379, 391 (1975) (Burger, C.J., concurring). In *Mandel v. Bradley*, 432 U.S.

17

173 (1977), the Court quoted Chief Justice Burger approvingly and reiterated that "[b]ecause a summary affirmance is an affirmance of the judgment only, the rationale of the affirmance may not be gleaned solely from the opinion below." *Id.* at 176. Since then, the Supreme Court has repeatedly confirmed this explanation of its summary affirmances. *See, e.g.*, *Montana v. Crow Tribe of Indians*, 523 U.S. 696, 714 n.14 (1998) ("A summary disposition affirms only the judgment of the court below, and no more may be read into our action than was essential to sustain that judgment." (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 784 n.5 (1983))); *Wis. Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 224 n.2 (1992) ("[O]ur summary disposition affirmed only the *judgment* below, and cannot be taken as adopting the reasoning of the lower court."); *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 212 n.24 (1983) ("[A]s with all summary affirmances, our action 'is not to be read as an adoption of the reasoning supporting the judgment under review.'" (quoting *Zobel v. William*s, 457 U.S. 55, 64 n.13 (1982))). And this Court has interpreted a summary affirmance by our predecessor circuit as "only approv[ing] the result reached in the district court without expressly approving the opinion or adopting its reasons." *DeShong v. Seaboard Coast Line R.R. Co.*, 737 F.2d 1520, 1523 (11th Cir. 1984). It makes no sense, and would run counter to principles of federalism and comity, to constrain

18

state courts in their use of summary affirmances in a way that we do not constrain ourselves.

An appellate court might affirm because it agrees with the disposition of a claim for a different reason. This Court frequently affirms "on any ground supported by the record[,] even if that ground was not considered by the district court." *Clements v. LSI Title Agency, Inc.*, 779 F.3d 1269, 1273 (11th Cir. 2015) (alteration in original) (quoting *Seminole Tribe of Fla. v. Fla. Dep't of Revenue*, 750 F.3d 1238, 1242 (11th Cir. 2014)); *see also United States v. Hall*, 714 F.3d 1270, 1271 (11th Cir. 2013) ("[W]e may affirm for any reason supported by the record, even if not relied upon by the district court." (alteration in original) (quoting *United States v. Chitwood*, 676 F.3d 971, 975 (11th Cir. 2012))). In particular, this Court can affirm the denial of a writ of habeas corpus "for reasons other than those advanced by the district court." *Demps v. Wainwright*, 805 F.2d 1426, 1428 (11th Cir. 1986). Our sister circuits do too. *See, e.g.*, *Sullo & Bobbitt, P.L.L.C. v. Milner*, 765 F.3d 388, 392 (5th Cir. 2014) ("We are not limited to the district court's reasons for its grant of summary judgment and may affirm the district court's summary judgment on any ground raised below and supported by the record." (quoting *Boyett v. Redland Ins. Co.*, 741 F.3d 604, 606–07 (5th Cir. 2014))); *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012) ("[W]e can affirm . . . on any ground supported by the record, even if the district

19

court did not rely on the ground." (quoting *United States v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011))).

To be sure, the Supreme Court stated in *Ylst* that "silence implies consent," 501 U.S. at 804, but it recited this "maxim" to explain why it is "most improbable" that a court would silently disregard a procedural default. *Id.* We should not apply *Ylst* to a different context that it did not address. *Ylst* creates a rebuttable presumption that state procedural default rulings are not undone by unexplained orders. *See id.* It does not direct a federal court to treat the reasoning of a decision on the merits by a lower court as the reasoning adopted by a later summary decision that affirms on appeal, especially since neither the Supreme Court nor any federal circuit court operates that way. As Judge O'Scannlain explained, "[i]t makes far more sense to assume that the [state supreme court] adhered to an established practice of summarily denying meritless claims rather than to presume" that the state supreme court "adopted wholesale the reasoning" of a lower court. *Cannedy v. Adams*, 733 F.3d 794, 800–01 (2013) (O'Scannlain, J., dissenting from the denial of rehearing en banc).

Because appellate courts may affirm for different reasons, federal courts should not, under the deferential standard of review established in section 2254, assume that the summary affirmances of state appellate courts adopt the reasoning of the court below. "AEDPA's requirements reflect a 'presumption that state courts

know and follow the law.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). Federal habeas review acts as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation omitted) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and *Visciotti*, 537 U.S. at 24). "Adherence to these principles serves important interests of federalism and comity." *Donald*, 135 S. Ct. at 1376. Accordingly, even when the opinion of a lower state court contains flawed reasoning, the Act requires that we give the last state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt," *Renico*, 559 U.S. at 773 (quoting *Visciotti*, 537 U.S. at 24), and presume that it "follow[ed] the law," *Donald*, 135 S. Ct. at 1376 (quoting *Visciotti*, 537 U.S. at 24).

Likewise, the Supreme Court has explained that the doctrine of procedural default in habeas cases "is grounded in concerns of comity and federalism." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). "Without the rule, . . . habeas would offer state prisoners whose custody was supported by independent and adequate state grounds . . . a means to undermine the State's interest in enforcing

21

its laws." *Id.* at 730–31. *Ylst* protected this doctrine by directing federal courts to consider whether a state decision rested on a procedural default in instances where the last state court judgment was a summary order.

Wilson and Georgia would have us ignore these interests of federalism and comity and impose opinion-writing standards on state appellate courts. Under their approach, a state appellate court that adjudicates a prisoner's federal claim on the merits would have to provide a statement of reasons to prevent a federal court, on habeas review, from treating the decision of that state appellate court as a rubberstamp of the opinion below. But the Supreme Court has instructed us to do otherwise. It has stated, "[W]e have no power tell state courts how they must write their opinions." *Id.* at 739. And it has since repeated the point: "[F]ederal courts have no authority to impose mandatory opinion-writing standards on state courts." *Williams*, 133 S. Ct. at 1095. And for good reason: requiring state courts to provide rationales would impose a heavy burden. "The caseloads shouldered by many state appellate courts are very heavy, and the opinions issued by these courts must be read with that factor in mind." *Id.* at 1095–96 (footnote omitted). "[R]equiring a statement of reasons could undercut state practices designed to preserve the integrity of the case-law tradition. The issuance of summary dispositions in many collateral attack cases can enable a state judiciary to concentrate its resources on the cases where opinions are most needed." *Richter*,

22

562 U.S. at 99. This Circuit has explained that "[t]elling state courts when and how to write opinions to accompany their decisions is no way to promote comity." *Bishop v. Warden, GDCP*, 726 F.3d 1243, 1255 (11th Cir. 2013) (alteration in original) (quoting *Wright v. Sec'y, Dep't of Corr.*, 278 F.3d 1245, 1255 (11th Cir. 2002)). Judge Jill Pryor's dissent argues that its approach would not impose opinion-writing standards because the Georgia Supreme Court could issue a one-line order stating that it agreed with the result reached by a lower court but not for the same reasons. But that approach does nothing less than impose an opinion-writing standard. We decline to read *Ylst* and *Richter* in a way that "smacks of a 'grading papers' approach that is outmoded in the post-AEDPA era." *Id.* (quoting *Wright*, 278 F.3d at 1255).

Judge Jill Pryor's dissent argues that the Georgia Supreme Court intends to adopt the opinion of a lower court when it summarily affirms and that we should not assign those summary affirmances the meaning of summary affirmances by federal appellate courts, but we disagree with the dissent's interpretation of Georgia law. Nothing in Georgia law or the practice of the Georgia Supreme Court proves that a summary denial of an application for a certificate of probable cause adopts the reasoning of the superior court. That the Georgia Supreme Court sometimes provides reasons for its denial of an application for a certificate of probable cause when it disagrees with certain reasoning by the superior court does

23

not prove that the Georgia Supreme Court endorses the opinion of the superior court every time it does not write an opinion. It proves only that the Georgia Supreme Court sometimes chooses to provide reasons for a decision. Because we must give state court decisions the "the benefit of the doubt," *Renico*, 559 U.S. at 773 (quoting *Visciotti*, 537 U.S. at 24), we cannot assume that state practice is different from federal practice absent any indication from state law.

When assessing under *Richter* whether there "was no reasonable basis for the state court to deny relief," 562 U.S. at 98, a federal habeas court may look to a previous opinion as one example of a reasonable application of law or determination of fact. For example, in *Gissendaner v. Seaboldt*, 735 F.3d 1311 (11th Cir. 2013), we affirmed the denial of a claim of ineffective assistance of counsel because "the state habeas court's finding that Gissendaner had failed to demonstrate the requisite prejudice did not involve an unreasonable application of *Strickland* or an unreasonable determination of fact." *Id.* at 1318. When the reasoning of the state trial court was reasonable, there is necessarily at least one reasonable basis on which the state supreme court could have denied relief and our inquiry ends. In this way, federal courts can use previous opinions as evidence that the relevant state court decision under review is reasonable. But the relevant state court decision for federal habeas review remains the last adjudication on the

24

merits, and federal courts are not limited to assessing the reasoning of the lower court.

As amicus argues, under the "look through" approach, federal courts would always attribute the reasoning of a lower court to a state appellate court that summarily affirmed, even in circumstances where it is implausible that the state appellate court adopted that reasoning wholesale. For example, between the date of a lower court decision and the date of a summary affirmance by the state supreme court, the Supreme Court of the United States might issue a decision that changes "clearly established Federal law," 28 U.S.C. § 2254(d). By "looking through" to the lower court decision, the federal court would assume that the state supreme court willfully ignored the intervening change in law, instead of assuming that the state supreme court considered the new law and ultimately reached the same disposition of the claim as the lower court, although for different reasons (such as harmless error). But the Supreme Court has instructed us to "presum[e] that state courts know and follow the law." *Donald*, 135 S. Ct. at 1376 (quoting *Visciotti*, 537 U.S. at 24).

Wilson argues that in instances where an intervening Supreme Court ruling bears on the case, the *Ylst* presumption would be rebutted, but it would be rebutted by reviewing the state court proceedings in a way that is contrary to the requirements of section 2254. To rebut the presumption, a federal court would

presumably consider the opinion of the lower court, the later unexplained order by the state appellate court, and the briefing before that appellate court, *see Ylst*, 501 U.S. at 804, thereby reviewing the entire process by which a prisoner's federal claim was adjudicated. But section 2254 refers to a single adjudication and its resulting "decision." By reviewing one final state court decision, instead of inspecting how different state courts ruled before that final decision, federal courts in habeas review "leave[] primary responsibility with the state courts," *Visciotti*, 537 U.S. at 27.

The Supreme Court has never held that a federal court must "look through" the last adjudication on the merits and examine the specific reasoning used by the lower state court. The phrase "look through" from *Ylst* has come to stand for the routine practice of "looking through" denials of appellate review that are not on the merits to locate the proper state court adjudication on the merits for purposes of section 2254(d). For example, in *Brumfield v. Cain*, 135 S. Ct. 2269 (2015), the prisoner filed a state postconviction petition that raised an *Atkins* claim and requested an evidentiary hearing. *See Atkins v. Virginia*, 536 U.S. 304 (2002). The state trial court dismissed Brumfield's petition and stated that Brumfield "had not demonstrated impairment in adaptive skills." *Brumfield*, 135 S. Ct. at 2289. The Louisiana Supreme Court then "summarily denied his application for a supervisory writ to review the trial court's ruling." *Id.* at 2275. "In conducting the § 2254(d)(2)

inquiry," the Supreme Court of the United States "'look[ed] through' the Louisiana

Supreme Court's summary denial of Brumfield's petition for review." *Id.* at 2276.

Because, as noted above, the denial of a supervisory writ in Louisiana is not on the

merits, *see* La. Sup. Ct. R. 10, the Louisiana Supreme Court did not adjudicate

Brumfield's claim on the merits when it denied his application. For this reason, the

decision of the state trial court was the last state court adjudication on the merits.

Similarly, in *Johnson v. Williams*, the Supreme Court approved the approach

of the Ninth Circuit of looking through the California Supreme Court's summary

denial of the petition for review. *See* 133 S. Ct. at 1094 n.1. The Ninth Circuit had

"look[ed] through" the "state court's decision to deny *discretionary* review"

because, unlike the summary denial of an original petition reviewed in *Richter*, it

was "decidedly not a decision on the merits." *Williams v. Cavazos*, 646 F.3d 626,

636 (9th Cir. 2011) (emphasis added), *rev'd sub nom. Johnson v. Williams*, 131 S.

Ct. 1088; *see* Cal. R. Ct. 8.500(b). For the same reason, the Supreme Court has

reviewed decisions from the Michigan Court of Appeals in circumstances where

the Michigan Supreme Court later denied discretionary, certiorari-style review,

Mich. Ct. R. 7.305. *See Donald*, 135 S. Ct. at 1375; *Burt v. Titlow*, 134 S. Ct. 10,

15 (2013); *Lafler v. Cooper*, 132 S. Ct. 1376, 1383 (2012). In all of these

decisions, the Supreme Court did not "look through" the last adjudication on the

merits to review the last reasoned opinion of a state court but instead looked

through discretionary denials of review to identify the last adjudication on the merits.

Contrary to the dissents' argument, the Supreme Court did not hold in *Premo v. Moore*, 562 U.S. 115 (2011), that a federal court must "look through" a summary decision to review the reasoning used by a lower court. In *Moore*, a state trial court denied Moore's petition for postconviction relief, and the Oregon Court of Appeals affirmed without opinion. *Moore v. Palmateer*, 26 P.3d 191 (Or. Ct. App. 2001) (table). The Supreme Court did not say it looked through the unexplained order, and, in fact, it did not "look through." After describing the decision of the trial court in two sentences, *Moore*, 562 U.S. at 123, the Supreme Court proceeded to discuss why it "would not have been unreasonable" for the state court to conclude, *id.* at 124, 127, 128, or "reasonably could have concluded," *id.* at 131, that Moore was not entitled to relief. The Supreme Court instead appears to have applied *Richter* despite the trial court offering a reasoned opinion. Indeed, Judge Jill Pryor's dissent even admits that the Supreme Court applied the *Richter* test. Judge Jill Pryor's dissent reasons that the Supreme Court applied the *Richter* test because the state court "did not specify," *id.* at 123, on which prong of *Strickland* it ruled, but the Supreme Court never suggested that *Richter* would apply only when a state ruling is unclear. Even if the Supreme Court had looked to the reasons provided by the trial court, it would not establish that a federal court

28

must evaluate only the reasons provided by a lower state court because, as in

*Gissendaner*, the Supreme Court concluded that Moore was not entitled to relief.

*Id. Moore* neither applied the look-through rule nor implied that we must "look

through" in the circumstances we consider here.

Several of our sister circuits have stated that courts must "review the last

reasoned state court decision," *Woodfox v. Cain*, 772 F.3d 358, 369 (5th Cir. 2014)

(quoting *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012)), but only the Fourth

and Ninth Circuits have expressly applied this rule to "look through" an on-the-

merits adjudication of a higher state court and then grant habeas relief, *see*

*Grueninger v. Dir., Va. Dep't of Corr.*, 813 F.3d 517, 525–27 (4th Cir. 2016);

*Cannedy v. Adams*, 706 F.3d 1148, 1158, 1166 (9th Cir. 2013). Other circuit courts

have stated this rule but have in fact only "looked through" discretionary denials.

*See, e.g.*, *Sanchez v. Roden*, 753 F.3d 279, 298 n.13 (1st Cir. 2014); *Woodfox*, 772

F.3d at 369; *Woolley v. Rednour*, 702 F.3d 411, 421 (7th Cir. 2012). For example,

in *Woolley v. Rednour*, the Seventh Circuit reviewed the written opinion of the

Illinois Appellate Court rejecting Woolley's *Strickland* claim after the Supreme

Court of Illinois had denied Woolley leave to appeal. 702 F.3d at 421. The Seventh

Circuit stated that the ruling of the Illinois Appellate Court was the "last reasoned

opinion" and that the Illinois Supreme Court "presumptively adopt[ed] the

reasoning of the state appellate court under *Ylst*." *Id.* at 422. But we too would

29

have reviewed the opinion of the Illinois Appellate Court under our reading of Supreme Court precedent because the denial of Wooley's petition for leave to appeal was under a discretionary review process. *See* Ill. Sup. Ct. R. 315(a). The decision of the Illinois Appellate Court was both the "last reasoned opinion," *Woolley*, 702 F.3d at 422, as well as the "last state-court adjudication on the merits," *Greene*, 132 S. Ct. at 45.

The Fourth and Ninth Circuits held—and two Justices of the Supreme Court agree—that *Richter* governs only where "there was *no* reasoned decision by a lower court" and that *Ylst* provides the rule where there is one, *Cannedy*, 706 F.3d 1148; *see Hittson v. Chatman*, 135 S. Ct. 2126 (2015) (Ginsburg, J., joined by Kagan, J., concurring in the denial of certiorari); *Grueninger*, 813 F.3d at 525–27, but we respectfully disagree. That approach reads *Ylst* too broadly and *Richter* too narrowly. The Fourth Circuit cited *Brumfield* as limiting the *Richter* rule to circumstances in which no state court has written an opinion. *See Grueninger*, 813 F.3d at 526–27. But, as explained above, the Supreme Court in *Brumfield* looked through a discretionary denial of review and had no opportunity to apply or qualify *Richter*. In an opinion concurring in the denial of certiorari in *Hittson*, Justice Ginsburg stated that because *Ylst* directs federal habeas courts to "look through" state decisions "to determine whether a claim was procedurally defaulted[,] [t]here is no reason not to 'look through' such adjudications, as well, to determine the

30

particular reasons why the state court rejected the claim on the merits." *Hittson*, 135 S. Ct. at 2128. Yet one reason to "look through" for purposes of procedural default but no further is that appellate courts often affirm on bases not relied on by lower courts. Indeed, Justice Ginsburg's concurrence serves as a perfect illustration. She concurred in the denial of certiorari because she was "convinced that the Eleventh Circuit would have reached the same conclusion had it properly applied *Ylst*." *Id.* Justice Ginsburg was satisfied with our decision on the merits even though she did not agree with our reasoning. Because appellate courts may affirm for different reasons, presuming that state appellate courts affirm only for the precise reasons given by a lower court deprives them of the "benefit of the doubt" that the Act and *Richter* require, *Renico*, 559 U.S. at 773 (quoting *Visciotti*, 537 U.S. at 24).

## III. CONCLUSION

We **REMAND** this appeal to the panel for consideration of the remaining issues.

31

JORDAN, Circuit Judge, joined by WILSON, MARTIN, ROSENBAUM, and JILL PRYOR, Circuit Judges, dissenting:

If we are candid, we should acknowledge that the best we can do is predict which line of authority the Supreme Court will use to decide whether, in an AEDPA habeas case, it is appropriate to presume that the Georgia Supreme Court's summary denial of a certificate of probable cause is based on the rationale articulated by the trial court in its reasoned decision. My prediction is that the Supreme Court will decide the issue differently than the en banc majority and hold that the presumption in *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 806 (1991), governs. With respect, therefore, I dissent.

1.    The two cases that the majority primarily relies on—*Harrington v. Richter*, 562 U.S. 86 (2011), and *Cullen v. Pinholster*, 563 U.S. 170 (2011)—both arose in a scenario where only one state appellate court ruled on the claim and there was no reasoned decision by a lower court. *See Richter*, 512 U.S. at 96–97; *Pinholster*, 563 U.S. at 177–79. There was, in other words, no possibility of looking through the state appellate court's ruling in either of those cases. That difference is significant, particularly given that the Supreme Court has never (ever) applied *Richter* or *Pinholster* to a case involving a reasoned lower-court decision.

2.    According to the majority, nothing in *Richter* suggests that its reasoning is limited to the narrow subset of habeas cases where there is no reasoned decision from any state court. That may be true, but *Ylst* was similarly

32

silent with respect to its own reach.  If the majority is right about the breadth of *Richter*, then the same goes for *Ylst*, as nothing in *Ylst* suggests that its look-through approach is limited to the subset of cases where the state lower court's rejection of a claim on procedural grounds is later affirmed without explanation.  So silence is a legal wash (or, if one prefers betting parlance, a push).

3.    As we are reading tea leaves to divine what *Richter* means, it might be a good idea to start with what the Supreme Court has actually said about *Richter*.  In a recent case citing *Richter*, the Supreme Court described its scope in narrow terms, limiting it to situations where there is no reasoned lower court decision.  *See Brumfield v. Cain*, 135 S. Ct. 2269, 2282–83 (2015) (characterizing *Richter* as "requiring federal habeas court to defer to hypothetical reasons state court might have given for rejecting federal claim *where there is no 'opinion explaining the reasons relief has been denied'*") (quoting *Richter*, 562 U.S. at 98) (emphasis added).  If the Supreme Court has characterized *Richter* in this limited way, we should not become literary critics who profess to know the meaning of a work better than its author.

4.    It would also be instructive to look at what the Supreme Court has done in a case similar to this one.  *Premo v. Moore*, 562 U.S. 115 (2011), an AEDPA habeas case, was heard together with, and was decided on the same day as, *Richter*.  Although *Moore* did not mention *Ylst*, or explicitly say that it was

looking through to the last reasoned state court decision, that is what the Supreme Court seemed to do.

In *Moore*, the Oregon post-conviction court denied the defendant's ineffective assistance of counsel claim because it found that counsel's efforts to suppress certain evidence would have been "fruitless." *Id.* at 119–20. The Oregon Court of Appeals "affirmed without opinion." *See Moore v. Palmateer*, 26 P.3d 191 (Or. Ct. App. 2001). After a federal district court denied the defendant's petition for a writ of habeas corpus and the Ninth Circuit reversed, the Supreme Court considered whether the state post-conviction court's reasoned decision (not the unexplained summary affirmance by the Oregon Court of Appeals) was an unreasonable application of federal law. *See Moore*, 562 U.S. at 132 ("The state postconviction court's decision involved no unreasonable application of Supreme Court precedent."). In the absence of a direct holding on the question before us, what the Supreme Court actually did in *Moore* is another indication that *Richter* should not be read too broadly. *Cf.* Oliver Wendell Holmes, The Common Law 5 (Howe ed. 1963) ("The life of the law has not been logic; it has been experience.").

5. *Sears v. Upton*, 561 U.S. 945 (2010), a non-habeas case decided before the passage of AEDPA, involved the Georgia Supreme Court's summary denial of a certificate of probable cause. In analyzing the claim at issue, the Supreme Court applied a look-through approach and reviewed not the summary

34

denial, but the last reasoned state court decision. *Sears*, in my opinion, supports the application of the *Ylst* presumption here.

The state trial court in *Sears* ruled that the defendant's counsel had rendered deficient performance with regard to the investigation at the penalty phase, but denied relief because in its view it could not speculate as to what the effect of the additional mitigating evidence (i.e., the additional mitigating evidence that would have been discovered had counsel performed a constitutionally adequate investigation) would have been. When the Georgia Supreme Court summarily denied him a certificate of probable cause, *see id.* at 946, the defendant sought a writ of certiorari.

The Supreme Court granted certiorari and reversed, holding that the state trial court had improperly applied the prejudice prong of *Strickland v. Washington*, 466 U.S. 668, 694 (1984). *See Sears*, 561 U.S. at 952–53. The Supreme Court did not try to imagine hypothetical grounds on which the Georgia Supreme Court could have possibly rejected the ineffectiveness claim (and therefore found no "arguable merit" in the request for a certificate of probable cause). Instead, the Supreme Court repeatedly reviewed and discussed what the state trial court had done, and in fact reversed precisely because of what the state trial court had (improperly) done. *See, e.g., id.* at 953–54 ("There are two errors in the state court's analysis of Sears' Sixth Amendment claim. First, the court curtailed a

35

more probing prejudice inquiry because it placed undue reliance on the assumed reasonableness of counsel's mitigation theory.  .  .  .  Second, and more fundamentally, the court failed to apply the proper prejudice inquiry.").  Even the dissent in *Sears* focused on the rulings of the state trial court.  *See, e.g., id.* at 960 (Scalia, J., dissenting) ("Since the habeas court made no legal error en route to its *Strickland* conclusion, the only basis for reversing the judgment here would be disagreement with the conclusion itself[.]").

*Sears* was not an AEDPA habeas case, but that difference in procedural context does not matter much, if at all.  The Supreme Court had certiorari jurisdiction in *Sears* pursuant to 28 U.S.C. § 1254(a), which provides for review of "final judgments or decrees rendered by the highest court of a State in which a decision could be had[.]"  The AEDPA provision that the majority focuses on here, 28 U.S.C. § 2254(d), allows those held in custody "pursuant to the judgment of a State court" to seek habeas relief, and instructs federal courts to not grant relief unless the state court "decision" was contrary to or involved an unreasonable application of clearly established federal law (as determined by the Supreme Court).  To my mind, §§ 1254(a) and 2254(d) are similar in that they allow federal review of state court "judgments."

I am not, of course, saying that there were two different judgments under review in *Sears*, or that there are two different judgments under review in this case.

The question we address is a different one: whether there should be a rebuttable presumption that where there is a reasoned decision by a lower court, an unexplained denial of relief by a state appellate court is based on the same rationale articulated by the lower court. And *Sears* suggests that the answer to that question is yes.

6.    Two members of the Supreme Court believe that we erred in failing to apply the *Ylst* look-through presumption to the Georgia Supreme Court's summary denial of a certificate of probable cause. *See Hittson v. Chatman*, 135 S. Ct. 2126, 2128 (2015) (Ginsburg, J., joined by Kagan, J., concurring in the denial of certiorari) ("The Eleventh Circuit plainly erred in discarding *Ylst*. In *Richter*, the only state court to reject the prisoner's federal claim had done so in an unexplained order. With no reasoned opinion to look through to, the Court had no occasion to cast doubt on *Ylst*. To the contrary, the Court cited *Ylst* approvingly in *Richter* and did again two years later in *Johnson v. Williams*, 568 U.S. ___, ___, n.1, 133 S.Ct. 1088, 1094 n.1 (2013)."). Two Justices do not a majority make, but their views should be given due consideration.

7.    As far as I can tell, all of the circuits to have considered the look-through issue limit *Richter* to situations where there is no reasoned decision by any state court. *See Grueninger v. Dir., Va. Dep't of Corr.*, 813 F.3d 517, 525–26 (4th Cir. 2016) ("*Richter* addressed a situation in which a state habeas petition was

37

presented directly to a state supreme court as an original petition and then denied by that court in a one-sentence summary order, so that there was no reasoned decision by any state court. . . . The situation is different when there is a state-court decision explaining the rejection of a claim.    When a state appellate court summarily affirms a reasoned lower-court decision, or refuses a petition for review, then under *Ylst*, a federal habeas court is to 'look through' the unexplained affirmance[.]") (internal citations omitted); *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir. 2013) ("[I]t does not follow from *Richter* that, when there *is* a reasoned decision by a lower state court, a federal habeas court may no longer 'look through' a higher state court's summary denial to the reasoning of the lower state court."); *Woolley v. Rednour*, 702 F.3d 411, 422 (7th Cir. 2012) (explaining that *Richter*, "[b]y its terms" is limited to cases "'[w]here a state court's decision is unaccompanied by an explanation'") (quoting *Richter*, 562 U.S. at 98).  *See also Woodfox v. Cain,* 772 F.3d 358, 369 (5th Cir. 2014) ("Under AEDPA, 'we review the last *reasoned* state court decision.'") (emphasis added and citation omitted).

There should be strong reasons for creating a circuit split, and I do not see any such reasons here.  The views of the Fourth, Fifth, Seventh, and Ninth Circuits, moreover, make practical sense. Starting with a result (the result reached in a summary denial of relief), then coming up with hypothetical reasons to support that result, and then assessing whether such imagined reasons are contrary to or an

unreasonable application of clearly established Supreme Court precedent, is not what appellate courts normally do. The notion of a court starting with a result, and then searching far and wide for reasons to justify that result, turns the notion of neutral decisionmaking on its head. *Richter* requires us to perform that sort of analysis under AEDPA when there is one (and only one) summary state court decision denying relief, but there is no good reason to expand its reach beyond that limited procedural scenario.

8.    The majority's conclusion is contrary to what we have done in the past. In published AEDPA habeas opinions both before and after *Richter*, we looked through the Georgia Supreme Court's summary denial of a certificate of probable cause and reviewed the decision of the state trial court, i.e., the last reasoned state court decision. *See Putnam v. Head*, 268 F.3d 1223, 1242–49 (11th Cir. 2001) (Black, Hull, and Wilson, JJ.); *Johnson v. Upton*, 615 F.3d 1318, 1330 (11th Cir. 2010) (Carnes, Hull, and Pryor, JJ.); *Bishop v. Warden*, 726 F.3d 1243, 1255–58 (11th Cir. 2013) (Barkett, Marcus, and Martin, JJ.); *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1317–33 (11th Cir. 2013) (Carnes, Tjoflat, and Jordan, JJ.). Apparently all of those panel decisions just misread *Ylst* and/or *Richter*.

9.    Part of the majority's rationale also clashes with circuit precedent. According to the majority, a federal court would violate the requirements of § 2254 if it were to review the whole process by which a prisoner's federal claim was

39

adjudicated.    Because § 2254 refers to a single adjudication and its resulting decision, the majority concludes that a federal court may only review the final state court decision, instead of inspecting how different state courts ruled before that final decision was rendered. *See id.* The problem with the majority's reasoning is that it ignores (and would overrule or at least strongly conflict with) our decisions in *Windom v. Sec'y, Dep't of Corr.*, 578 F.3d 1227 (11th Cir. 2009), *Hammond v. Hall*, 586 F.3d 1289 (11th Cir. 2009), and *Loggins v. Thomas*, 654 F.3d 1204 (11th Cir. 2011).  In these AEDPA habeas cases we examined and reviewed both the last state court decision and the penultimate state court decision.

For example, in *Hammond* the Georgia trial court, on collateral review, ruled that counsel had not rendered deficient performance under the standard articulated in *Strickland*.  On appeal, the Georgia Supreme Court expressly declined to address counsel's performance, and instead held that the defendant failed to show prejudice.  When the case reached us, we did not have any trouble examining *both* the trial court's decision (on the performance prong) and the Georgia Supreme Court's decision (on the prejudice prong) in conducting AEDPA review.  We held that "where a state trial court rejects a claim on one prong of the ineffective assistance of counsel test and the state supreme court, without disapproving that holding, affirms on the other prong, both of those state court decisions are due AEDPA deference." *Hammond*, 586 F.3d at 1332.

40

We therefore went on to review the reasoning given by *both* Georgia courts, at each level of review, to decide whether "*both* reasons for rejecting the claim are 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.'" *Id.* (emphasis added). In choosing to examine both decisions, we explained that "the critical fact . . . is that the Georgia Supreme Court does not appear to have disagreed with the trial court's decision on the deficiency element. The court could have easily expressed its disagreement, if any, but it did not do so." *Id.* at 1331.

In other words, we held in *Hammond* that silence on the part of the Georgia Supreme Court implied consent with the trial court's reasoning. That, by the way, is the assumption that *Ylst* is based on: "The maxim is that silence implies consent, not the opposite—and courts generally behave accordingly, affirming without further discussion when they agree, not when they disagree, with the reasons given below." *Ylst*, 501 U.S. at 804. But here, for some reason, silence does not imply consent. Maybe I'm missing something, but it seems hard to reconcile the majority's categorical rejection of a look-through presumption outside the *Ylst* procedural bar context with our decisions in cases like *Hammond*. *See also Loggins*, 654 F.3d at 1217 (explaining, post-*Richter*, that "[o]ur case law also makes clear that we accord AEDPA deference not only to the adjudications of state appellate courts but also to those of state trial courts that have not been overturned

41

on appeal"); *Windom*, 578 F.3d at 1249–51 (granting AEDPA deference to the state trial court's rejection of an ineffective assistance of counsel claim for lack of prejudice, even though the Georgia Supreme Court affirmed on performance grounds without reaching the prejudice issue). If, as the majority says, a federal court would violate § 2254 by looking at how lower state courts ruled, as opposed to the state supreme court ruled, then the underlying rationale for *Windom*, *Hammond*, and *Loggins* has been wiped away by a series of keystrokes.

Unfortunately for the district courts that now have to implement today's ruling, and the lawyers who have to live with it, the majority does not explain why it believes its holding is consistent with *Windom* and its progeny. As I understand our circuit precedent following today's decision, when a state supreme court denies a claim in a reasoned opinion by relying on a single rationale and expressly declines to address a different rationale articulated by the lower court, a federal habeas court can nevertheless look through that state supreme court opinion and review (with AEDPA deference) the different rationale offered by the lower court in its reasoned opinion, on the theory that the supreme court's silence indicates acquiescence as to that unaddressed rationale. But when a state supreme court denies a claim summarily—i.e., without saying anything whatsoever about the lower court's rationale—a federal habeas court cannot look through the summary denial to the reasoned opinion of the lower court because in that scenario,

42

apparently, silence does not indicate consent.  Why this is so remains a mystery,

and it will be left to district courts and future Eleventh Circuit panels to sort out the

doctrinal mess.

JILL PRYOR, Circuit Judge, joined by WILSON, MARTIN, JORDAN, and ROSENBAUM, Circuit Judges, dissenting:

The question before the en banc Court today is whether a federal habeas court should look through a state appellate court's summary decision denying a petitioner relief to the reasoning in a lower state court decision when deciding whether the state appellate court's decision is entitled to deference under 28 U.S.C. § 2254(d). "Looking through" means that the federal habeas court presumes that when a state appellate court issues a summary decision, it has implicitly adopted the reasons given in a lower state court's decision for denying the petitioner's claims, absent strong evidence to rebut the presumption. The federal court then reviews the lower court's reasoning when deciding whether the state appellate court's decision is entitled to deference. By rejecting a look-through presumption, the majority places a far heavier burden on habeas petitioners than the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires. I reject the majority's position because (1) Supreme Court precedent indicates we should look through and (2) the majority opinion runs roughshod over the principles of federalism and comity that underlie federal collateral review of state court decisions.

First, although the United States Supreme Court has not explicitly held that federal habeas courts must look through a summary state appellate court decision to a lower court's reasoning when deciding whether the state appellate court's

44

summary decision is entitled to deference under § 2254(d), the Supreme Court's

decisions nonetheless support looking through.  The Supreme Court first adopted a

look-through presumption in *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), holding

that a federal habeas court should look through a summary state appellate court

decision to the last reasoned state court decision to determine whether the

summary decision rested on a state law procedural default.  The Supreme Court's

justification for the presumption—that the state appellate court's summary decision

indicated "agree[ment] . . . with the reasons given below" for rejecting the

petitioner's claim—suggests a look-through presumption should be broadly

applied.  *Id.* at 804.  But I acknowledge that in *Ylst* the Court did not consider

whether a federal habeas court should treat a state appellate court's summary

decision as adopting the lower court's reasons for rejecting the petitioner's claims

on the merits.

Subsequently, in *Harrington v. Richter*, 562 U.S. 86 (2011), the Supreme

Court addressed federal court review of a summary state appellate court's denial of

collateral relief that was the only state habeas decision.  The Supreme Court held

that the federal court should defer to the summary decision "unless there was no

reasonable basis for the state court to deny relief."  *Id.* at 98.  The majority

contends that *Richter* controls how federal habeas courts should review all state

appellate court summary decisions, but in *Richter* there was no reasoned decision

from a lower court to look through to; thus, *Richter* did not address whether federal

habeas courts should look through.

Although neither *Ylst* nor *Richter* addressed the exact issue before us today,

in a companion case to *Richter*, *Premo v. Moore*, 562 U.S. 115 (2011), the

Supreme Court implicitly looked through an Oregon Court of Appeals summary

decision affirming the denial of relief to the state habeas trial court's opinion to

determine whether the summary decision was entitled to deference under

§ 2254(d).  Although the Supreme Court in *Moore* did not expressly state that it

was looking through, we should follow what the Supreme Court actually did in

*Moore*—and look through here.  And the Supreme Court has given us other signals

indicating that we should look through that the majority largely ignores.  The

majority's extension of *Richter* also creates a circuit split, as it directly contravenes

the decisions of at least two other circuits.

Second, the majority opinion tramples on the principles of federalism and

comity that underlie federal collateral review.  By rejecting a look-through

presumption, the majority opinion treats the reasoned opinion of a Georgia

superior court as a nullity merely because the Georgia Supreme Court subsequently

rendered a summary decision.  Although the Georgia Supreme Court has never

explicitly stated that its summary decisions indicate agreement with the superior

court's reasoning, there are good reasons to conclude that the Georgia Supreme

46

Court's silence indicates agreement with and adoption of the lower court's reasoning. This inference is supported by the way in which Georgia has structured its habeas system to require a superior court to render a reasoned decision denying relief only after discovery and an evidentiary hearing while allowing the Georgia Supreme Court to issue a summary decision denying review; the Georgia Supreme Court's practice of issuing a reasoned decision denying an application for a certificate of probable cause when it disagrees with the superior court's reasoning; and the Georgia Supreme Court's continued use of summary decisions despite knowing that the United States Supreme Court on direct review treats its silence as indicating agreement with and adoption of the superior court's reasoning. By requiring federal habeas courts to ignore this evidence about what the Georgia Supreme Court intended its summary decision to mean, the majority opinion violates the principles of federalism and comity that serve as the foundation for deference to state court proceedings under § 2254(d).

I am not alone in rejecting the majority's position. Two United States Supreme Court justices recently told us that we should use this en banc case as an "opportunity to correct [our] error" in failing to apply a look-through presumption. *Hittson v. Chatman*, 135 S. Ct. 2126, 2128 (2015) (Ginsburg, J., concurring in the denial of certiorari where looking through would not entitle the petitioner to relief). Justice Ginsburg, joined by Justice Kagan, wrote that we had "plainly erred" and

should instead "'look through' [the Georgia Supreme Court's summary] adjudications . . . to determine the particular reasons why the state court rejected the claim on the merits." *Id.* Although the opinion of two justices of course does not bind us, it nevertheless should give us pause about whether the majority has correctly interpreted *Ylst*, *Richter*, and *Moore* or correctly applied the core principles of federalism and comity undergirding federal habeas review under § 2254(d).

## I.    BACKGROUND

The question of whether we should adopt a look-through presumption arises in the context of our review of Georgia death row inmate Marion Wilson's federal habeas petition. Mr. Wilson was convicted of malice murder and sentenced to death. The Georgia Supreme Court affirmed the conviction and sentence. Mr. Wilson petitioned the Superior Court of Butts County, Georgia for collateral relief, arguing among other points that his trial counsel provided ineffective assistance by failing to investigate mitigation evidence at the penalty phase. After discovery and a two-day evidentiary hearing, the superior court denied Mr. Wilson's petition in a lengthy written order, determining that some of his claims were procedurally defaulted under Georgia law and others failed on the merits. With respect to the ineffective assistance of counsel claim based on counsel's failure to investigate mitigation evidence, the superior court explained that the claim failed for two

reasons:  counsel's performance was not deficient and Mr. Wilson had not demonstrated prejudice.  Mr. Wilson applied for a certificate of probable cause to appeal to the Georgia Supreme Court, which denied his application in a one-sentence summary order.  He then sought review in the United States Supreme Court, which denied his petition for certiorari.

Mr. Wilson then petitioned for a writ of habeas corpus in federal court based on ineffective assistance of counsel.  The district court denied his petition, concluding that the state court's adjudication was entitled to deference under 28 U.S.C. § 2254(d).  In deciding whether to defer to the state court's adjudication of Mr. Wilson's claim, the district court looked through the Georgia Supreme Court's summary denial of the application for a certificate of probable cause to the superior court's reasoning.  The district court acknowledged that "the conduct of Wilson's trial attorneys with regard to their investigation and presentation of mitigation evidence is difficult to defend."  Order at 1 (Doc. 51).[1]  But it denied relief because even if the superior court unreasonably determined that trial counsel's performance was not deficient, the superior court's determination that Mr. Wilson could not establish prejudice was entitled to deference.

[1] As the district court explained, just four months before the start of trial, the two lawyers who served as Mr. Wilson's trial counsel had not begun their mitigation investigation or even decided who would be responsible for the mitigation investigation.  Through trial, each attorney believed the other was primarily responsible for developing the mitigation case.  As a result, trial counsel never interviewed any background witnesses.  Although there were red flags about Mr. Wilson's background in documentary evidence, counsel failed to expand their investigation beyond the records.

49

Mr. Wilson appealed. After correctly determining that the Georgia Supreme Court summary decision was the relevant state court decision for review, a panel of this court held that it was not required to review the reasoned opinion of the superior court and instead framed the issue as "whether there was any reasonable basis for the [Georgia Supreme Court] to deny relief." *Wilson v. Warden, Ga. Diagnostic Prison*, 774 F.3d 671, 678 (11th Cir. 2014) (alteration in original) (internal quotation marks omitted), *reh'g en banc granted, op. vacated*, No. 14-10681 (11th Cir. July 30, 2015). We vacated the panel opinion to review en banc whether we should look through to the superior court's reasoning when deciding whether the Georgia Supreme Court's summary decision is entitled to AEDPA deference. Although only Mr. Wilson's case is presently before us, our resolution of this issue will effect numerous other habeas petitioners in Georgia, including many death row inmates.[2]

## II.    ANALYSIS

Section 2254(d) governs when a federal habeas court must defer to a state court's adjudication of a habeas claim. This provision forbids a federal court from granting an application for a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of

---

[2] Since February 2015, Georgia has executed nine individuals. Eight of them applied to the Georgia Supreme Court for a certificate of probable cause after the state habeas trial court denied relief. The Georgia Supreme Court denied each application in a summary order.

the claim" in the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d); *see Parker v. Sec'y for Dep't of Corr.*, 331 F.3d 764, 775-76 (11th Cir. 2003) (describing § 2254(d) as requiring federal courts to give deference to state court decisions).

Although § 2254(d) does not identify the state court decision to which we defer when multiple state courts have reviewed the petitioner's claim, the Supreme Court has explained that under § 2254(d) a federal habeas court reviews only one decision: "the last state-court adjudication on the merits." *Greene v. Fisher*, 132 S. Ct. 38, 45 (2011). The majority and I agree that here the last state court decision on the merits is the Georgia Supreme Court's denial of Mr. Wilson's application for a certificate of probable cause. *See Foster v. Chatman*, 136 S. Ct. 1737, 1746 n.2 (2016). Accordingly, we agree that to pierce AEDPA deference Mr. Wilson must show that the Georgia Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts. The majority opinion and I part ways, however, when it comes to the approach a federal habeas court should take in applying § 2254(d)'s standard to the Georgia Supreme Court's summary decision.

51

I believe that we should presume the Georgia Supreme Court adopted the superior court's reasoning and in effect review whether the superior court's application of federal law and determination of the facts are entitled to deference. To address why, I begin by explaining that a federal habeas court's application of § 2254(d)'s standard depends upon whether the state court rendered a reasoned decision. I then discuss why the federal habeas court should presume that when the Georgia Supreme Court summarily denies an application for a certificate of probable cause, it implicitly adopted the superior court's reasoning. Because this presumption allows the federal court to attribute reasoning to the Georgia Supreme Court's decision, I would have the federal court review whether the reasoning in the Georgia superior court's decision—which the Georgia Supreme Court implicitly adopted in its summary decision—is entitled to deference under § 2254(d).

## A. The Nature of Federal Review under § 2254(d) of State Court Decisions

I begin with the nature of a federal court's review of a state court decision under § 2254(d). More specifically, when must a federal court review the actual reasoning set forth in a state court decision and when must the court instead hypothesize possible reasons that could have supported the state court decision? In analyzing deference to a state court decision under § 2254(d), the Supreme Court has applied two distinct modes of analysis. The first mode applies when there is a

reasoned decision from the state court.  I refer to this as the "reasoned-decision" approach.  In these cases, a federal habeas court reviews the reasoning set forth in the state court decision and then determines whether that reasoning is entitled to deference.  The second mode applies when there is no reasoned state court decision.  I refer to this as the "unexplained-decision" approach.  In such cases, the federal habeas court may conjure up hypothetical arguments or theories that could have supported the result the state court reached and then reviews whether those arguments or theories are entitled to deference.

### 1.  The Reasoned-Decision Approach

Under the reasoned-decision approach, in considering whether to defer to a state court decision under § 2254(d), a federal habeas court reviews the reasoning in the state court decision, not the result the state court reached.  The Supreme Court applied this approach when it pierced AEDPA deference in *Wiggins v. Smith*.  539 U.S. 510 (2003).

In *Wiggins*, the petitioner, who was sentenced to death, argued that his trial counsel rendered ineffective assistance by failing to investigate his background or present mitigating evidence at his sentencing.  *Id.* at 514.  In state habeas proceedings, the Maryland Court of Appeals rejected the ineffective assistance claim, reasoning that because the defense attorneys had some information about the petitioner's background, they made a tactical choice not to present a mitigation

defense. *Id.* at 527. The United States Supreme Court pierced AEDPA deference because the state court's application of legal principles was unreasonable, in that the Maryland Court of Appeals failed to consider whether the petitioner's counsel should have investigated further. *See id.* ("In assessing the reasonableness of an attorney's investigation, . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further."). Importantly, the Supreme Court never considered hypothetical arguments or theories that could have supported the Maryland Court of Appeals's decision to deny relief, because for purposes of piercing AEDPA deference it was sufficient that the reasoning of that decision unreasonably applied clearly established federal law. *Id.* at 534.[3]

Significantly, if the petitioner demonstrates that the state trial court's reasoning was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of fact, he has pierced

---

[3] The Supreme Court has applied the reasoned-decision approach many times. *See, e.g.*, *Porter v. McCollum*, 558 U.S. 30, 42 (2009) (holding that state court unreasonably applied clearly established law because in its analysis the court "either did not consider or unreasonably discounted the mitigation evidence adduced in the postconviction hearing"); *Panetti v. Quarterman*, 551 U.S. 930, 952-53 (2007) (explaining that state court's determination that it had provided petitioner with adequate procedures to resolve his competency claim unreasonably applied clearly established federal law); *see also Early v. Packer*, 537 U.S. 3, 8 (2002) (explaining that no deference is required under § 2254 when "the reasoning" in a state court decision is contrary to clearly established law). So too have we. *See Evans v. Sec'y Dep't of Corr.*, 703 F.3d 1316, 1328 (11th Cir. 2013) (en banc) (Pryor, William, J.) (explaining that under AEDPA a federal habeas court must identify "the arguments supporting the decision" of the Florida Supreme Court and defer if "'it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]'" (alteration in original)).

AEDPA deference and is entitled to *de novo* review from the federal habeas court. *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007) (holding that state habeas court decision was not entitled to deference under § 2254(d) and then "consider[ing] petitioner's claim on the merits"). As a result, the district court considering his habeas claim "is no longer bound by § 2254(d) or limited to consideration of the facts developed in the state court record." *Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248, 1280 (11th Cir. 2016).

## 2. The Unexplained-Decision Approach

The Supreme Court recognized an exception to the reasoned-decision approach that allows a federal habeas court to consider hypothetical arguments or theories that could have supported the state court decision when the state court does not explain its reasons for denying relief—what I am calling the unexplained-decision approach. When federal habeas courts apply the unexplained-decision approach, they in effect review whether the result reached by the state court is entitled to deference. *See Richter*, 562 U.S. at 98. A chronology of Supreme Court decisions illustrates that the unexplained-decision approach was intended to be a narrow exception that applies only when no state court has provided reasons for rejecting the petitioner's claims.

In *Richter*, the Supreme Court first adopted the unexplained-decision approach when confronted with how to apply AEDPA's deferential standard to a

55

California Supreme Court summary decision that was the *only* state court decision

to address the petitioner's claim. In *Richter*, the petitioner sought habeas relief on

his ineffective assistance of counsel claim in the first instance in the California

Supreme Court, as permitted under California procedure.[4] The California Supreme

Court denied his petition in a one-sentence order. *Id.* at 96. The petitioner then

sought federal habeas relief. The Ninth Circuit concluded that the California

Supreme Court's decision was not entitled to deference because its decision

denying relief was unreasonable. *Id.* at 97. The United States Supreme Court

reversed, concluding that the California Supreme Court's summary decision was

entitled to deference under § 2254(d). *Id.* at 113.

The United States Supreme Court faced the dilemma of how a federal

habeas court should review the California Supreme Court's summary decision

under § 2254(d). Although the petitioner argued that the summary decision was

not on the merits, which would make § 2254(d) inapplicable, the United States

Supreme Court rejected this argument. *Id.* at 98-99. And because there was no

state court decision explaining why the petitioner's claim failed, it was impossible

for a federal habeas court to apply the reasoned-decision approach. The Supreme

Court resolved this problem by announcing a new approach to applying

---

[4] Each year more than 3,400 original petitions for a writ of habeas corpus are filed directly with the California Supreme Court, making up over one-third of that court's caseload. *See Richter*, 562 U.S. at 99.

56

§ 2254(d)'s standard.  The Supreme Court recognized that in some cases federal

habeas courts review the state habeas court's reasoning and in others the result:

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

*Id.* at 102.  Because the California Supreme Court's decision was unaccompanied

by an explanation, the federal habeas court could consider arguments or theories

that "could have supported the state court decision." *Id.*  The petitioner then had to

show that "there was no reasonable basis for the state court to deny relief." *Id.* at

98.  In effect, the petitioner had to show that the *result* reached by the California

Supreme Court was unreasonable.  And in deciding whether the result—that is, the

denial of relief—was unreasonable, the federal habeas court could consider only

the record that was before the state appellate court.  *Cullen v. Pinholster*, 563 U.S.

170, 180-81 (2011).

After *Richter*, circuits were split about the proper mode for federal habeas

courts to use when the last state court decision was accompanied by an

explanation, with some circuits treating *Richter* as requiring federal habeas courts

to review only the result reached by a state court even when the state court decision

57

was accompanied by an explanation.[5] *Compare Green v. Thaler*, 699 F.3d 404, 414 (5th Cir. 2012) (explaining that federal habeas courts "review the state court's actual decision, not the written opinion on which it is based"), *with Woolley v. Rednour*, 702 F.3d 411, 422 (7th Cir. 2012) (concluding that *Richter*'s unexplained-decision approach applies only when "a state court decision is unaccompanied by an explanation" (internal quotation marks omitted)), *and Rayner v. Mills*, 685 F.3d 631, 637-38 (6th Cir. 2012) (same). Then, in *Brumfield v. Cain*, 135 S. Ct. 2269 (2015), the Supreme Court clarified that under § 2254(d) federal habeas courts must apply the reasoned-decision approach whenever a state court decision is explained, meaning that federal courts should consider hypothetical arguments or theories only when there was no reasoned state court decision at all.

In *Brumfield*, the Supreme Court pierced AEDPA deference because the Louisiana state trial court's denial of an evidentiary hearing on the petitioner's claim that he could not be executed on account of his intellectual disability was based on unreasonable factual determinations. *Id.* at 2274. The state of Louisiana argued that even if the state habeas court had made unreasonable determinations of

---

[5] To be clear, this circuit split—about whether *Richter* required federal habeas courts to review the result reached, not the reasoning, of a state court—is distinct from the circuit split created by the majority opinion in this case, which concerns whether a federal habeas court should presume that a state appellate court's summary decision adopted a lower court's reasons for rejecting the petitioner's claim.

fact, its decision was entitled to deference under § 2254(d) because the result was reasonable given the petitioner's failure to present evidence that his intellectual disability manifested before he reached adulthood. *Id.* at 2282. Put another way, Louisiana argued that the Supreme Court should defer to a hypothetical justification for the denial of relief, even though the state habeas court had issued a reasoned decision.

The Supreme Court rejected Louisiana's position, explaining that because "the state trial court never made any finding that [the petitioner] had failed to produce evidence suggesting he could meet this age-of-onset requirement," there was "no determination on that point to which a federal court must defer in assessing whether [the petitioner] satisfied § 2254(d)." *Id.* Distinguishing *Richter*, the Supreme Court explained that federal habeas courts must defer to "hypothetical reasons [the] state court might have given for rejecting [the] federal claim" only when there is "no 'opinion explaining the reasons relief has been denied.'" *Id.* at 2282-83 (quoting *Richter*, 562 U.S. at 98).[6]

In many cases, it is clear whether the reasoned-decision or unexplained-decision approach should apply. When the last state court decision on the merits

---

[6] The majority's position that in *Brumfield* the Supreme Court "had no opportunity to apply or qualify *Richter*" simply cannot be squared with the Supreme Court's decision. Maj. Op. at 30. In *Brumfield* the Supreme Court clarified that federal habeas courts should not use the unexplained-decision approach announced in *Richter* when there is a reasoned state court decision.

explains why the petitioner is not entitled to relief, the Supreme Court has applied

the reasoned-decision approach when considering whether to defer to the state

court decision under § 2254(d). Conversely, when no state court has issued a

reasoned decision, the Supreme Court has told us that the federal habeas courts

should use the unexplained-decision approach. This case requires us to consider a

more difficult question: how should a federal habeas court treat a state appellate

court's unexplained summary decision when a lower state court *has* rendered a

reasoned decision?

### B. Looking Through a Summary State Appellate Court Decision When a Lower Court Has Rendered a Reasoned Decision

I would adopt a look-through rule and presume that when a state appellate

court renders a summary decision after a lower state court issued a reasoned

decision, the state appellate court adopted the lower court's reasoning. To be clear,

with a look-through presumption, the federal habeas court still would review the

last state court decision on the merits—the summary decision. The presumption

simply provides a way of identifying the arguments or theories on which the state

appellate court relied in its summary decision for the purpose of affording

deference under § 2254(d). Because the presumption permits reasoning to be

attributed to the Georgia Supreme Court's decision, I would have a federal habeas

court use the reasoned-decision approach to review the Georgia Supreme Court's

decision.[7]  As I explain below, adopting a look-through approach is appropriate for

two reasons:  (1) it is more consistent with the Supreme Court's leading decisions,

and (2) it best gives effect to the principles of federalism and comity that undergird

§ 2254(d).

### 1. The Leading Supreme Court Decisions Support a Look-Through Presumption.

The Supreme Court's decisions in *Ylst*, 501 U.S. 797, and *Moore*, 562 U.S.

115, inform us why federal habeas courts should apply a look-through presumption

when deciding whether a state appellate court's summary decision is entitled to

deference under § 2254.  Together these cases demonstrate that it is appropriate for

---

[7] I note that the majority opinion is utterly inconsistent with our decision in *Hammond v. Hall*, 583 F.3d 1289 (11th Cir. 2009), in which we reviewed both the trial court's decision and the Georgia Supreme Court's decision under § 2254(d).  In *Hammond*, the petitioner brought an ineffective assistance of counsel claim in Georgia superior court.  The superior court denied the claim on the basis that the petitioner failed to establish deficient performance, without addressing prejudice.  586 F.3d at 1330.  The petitioner then sought to appeal to the Georgia Supreme Court.  After granting a certificate of probable cause, the Georgia Supreme Court affirmed the superior court's decision but held that the petitioner failed to show prejudice and explicitly declined to address deficient performance.  *Id.*  Reviewing the petitioner's federal habeas petition, we held that "where a state trial court rejects a claim on one prong of the ineffective assistance of counsel test and the state supreme court, without disapproving that holding, affirms on the other prong," the petitioner must show both reasons for rejecting the claim are not entitled to deference under § 2254(d).  *Id.* at 1332.

Our decision in *Hammond* can be understood in one of two ways: either (1) federal courts may review more than one state court decision when applying § 2254(d), or (2) federal courts may presume that a state appellate court by its silence adopted a lower court's reasoning.  Either way the majority has countermanded *Hammond*.  First, the majority rejects the position that federal habeas courts may consider more than one state court decision under § 2254(d).  *See* Maj. Op. at 8 (directing that under § 2254(d), we only "review one decision").  Second, the majority forbids federal habeas courts from presuming that a state appellate court silently adopted the reasoning of a lower court.  *See id.* at 21.  Although the en banc court is not bound by prior panel precedent, I am troubled that the majority opinion never acknowledges its conflict with *Hammond* or offers an explanation for departing from this precedent.

federal courts to presume that a state appellate court's summary decision indicates agreement with the lower court's reasons for rejecting the petitioner's habeas claim on the merits.

a. *Ylst v. Nunnemaker*

The Supreme Court first recognized the look-through presumption in *Ylst*, where it treated a state appellate court's summary decision as adopting the grounds in the last reasoned decision that rejected the petitioner's habeas claim. In *Ylst*, a California inmate argued on direct appeal that the prosecution introduced evidence that was inadmissible under *Miranda v. Arizona*, 384 U.S. 436 (1966). *Ylst*, 501 U.S. at 799. The California Court of Appeal affirmed, explaining that under a state procedural rule the *Miranda* claim could not be raised for the first time on appeal. *Id.* The inmate petitioned, in turn, a California trial court, the California Court of Appeal, and the California Supreme Court for collateral relief. Each court summarily denied relief. *Id.* at 800. The inmate then sought a writ of habeas corpus in federal district court. The Ninth Circuit granted relief, holding that the California Supreme Court's silent denial of collateral relief lifted the procedural bar imposed on direct review. *Id.* at 801. The United States Supreme Court granted certiorari to address "how federal courts in habeas proceedings are to determine whether an unexplained order (by which we mean an order whose text

or accompanying opinion does not disclose the reason for the judgment) rests primarily on federal law." *Id.* at 802.

The Supreme Court held that federal courts should apply a look-through presumption to determine whether a state court's unexplained order applied a procedural bar, meaning "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Id.* at 803. This presumption may be rebutted with "strong evidence" that the later state court decision did not rely upon a procedural default, for example, where "a retroactive change in law had eliminated that ground as a basis of decision, and the court which issued the later unexplained order had directed extensive briefing limited to the merits of the federal claim." *Id.* at 804.

Although the question before the Supreme Court concerned only whether the later summary decision rested on a procedural ground like the last reasoned decision, the Supreme Court justified the look-through presumption in broad terms:

> The maxim is that silence implies consent, not the opposite—and courts generally behave accordingly, affirming without further discussion when they agree, not when they disagree, with the reasons given below. The essence of unexplained orders is that they say nothing. We think that a presumption which gives them *no* effect— which simply "looks through" them to the last reasoned decision— most nearly reflects the role they are ordinarily intended to play.

63

*Id.* at 804.  Even if dicta, this broad reasoning suggests that a look-through

presumption is appropriate not only to determine whether the state appellate court

applied a procedural default, but also to identify the reasons why the state appellate

court rejected the merits of the petitioner's claims.[8]

The majority opinion reads *Ylst* as supporting only a presumption that "a

summary affirmance rests on the same *general* ground—that is, a procedural

ground or on the merits—as the judgment under review."  Maj. Op. at 17.  The

majority relies on language in *Ylst* stating it would be "'most improbable' that an

'unexplained order leaving in effect a decision . . . that expressly relies upon

procedural bar' actually 'reject[ed] that bar and decid[ed] the federal question.'"

*Id.* (alterations in original) (quoting *Ylst*, 501 U.S. at 803-04).  Importantly, though,

the next sentence in *Ylst* explains why such a conclusion would be improbable:

because courts affirm "without further discussion when they agree, not when they

disagree, with the reasons given below."  *Ylst*, 501 U.S. at 804.  Indeed, the

Supreme Court recently has called into question the majority's contention that

*Ylst*'s look-through presumption means only that the state appellate court agreed

with the same general ground as the lower court, not its precise reasoning.  *See*

*Kernan v. Hinojosa*, 136 S. Ct. 1603 (2016) (holding that *Ylst* presumption was

overcome when there was strong evidence that the California Supreme Court's

---

[8] We must, of course, bear in mind that "there is dicta and then there is dicta, and then there is Supreme Court dicta."  *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006).

summary decision denying relief did not rest on precisely the same procedural ground as the California trial court's decision, without considering whether the California Supreme Court agreed with the more general conclusion that some procedural ground barred review).

I acknowledge there was no holding in *Ylst* that federal habeas courts should presume that a state appellate court adopted a lower court's reasons for rejecting a habeas petitioner's claims on the merits. But the rationale in *Ylst*—that a summary affirmance indicates agreement with the lower court's reasons absent strong evidence to the contrary—equally supports treating a state appellate court's summary affirmance as adopting a lower court's reasoning for rejecting the merits of the petitioner's claims.[9]

b. *Premo v. Moore* and *Harrington v. Richter*

*Moore* and *Richter* were companion cases—argued on the same day and then decided on the same day in opinions authored by Justice Kennedy. The majority contends *Richter* dictates that we must review the Georgia Supreme

---

[9] I note that prior to *Richter*, when reviewing state appellate court decisions for purposes of § 2254(d), we extended *Ylst* beyond the procedural default context and presumed that a state appellate court's summary affirmance adopted the lower court's reasons for rejecting the petitioner's claims on the merits. *See McGahee v. Ala. Dep't of Corr.*, 560 F.3d 1252, 1261 n.12 (11th Cir. 2009); *Putman v. Head*, 268 F.3d 1223, 1232, 1242 (11th Cir. 2001) (looking through Georgia Supreme Court's summary denial to superior court's reasoning). We were not alone: other circuits similarly interpreted *Ylst*. *See, e.g.*, *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir. 2013) (explaining it was a "common practice of the federal courts to examine the last reasoned state decision to determine whether a state-court decision is 'contrary to' or an 'unreasonable application of' clearly established federal law").

Court's summary decision using the unexplained-decision approach.  But *Richter*

did not address whether federal habeas courts should look through, because in

*Richter* the California Supreme Court was the only state court to render a decision

on the petitioner's claims.  Although *Richter* never addressed what mode federal

habeas courts should use when there is both a summary state appellate court

decision and a reasoned lower court decision, the majority opinion extends

*Richter*'s unexplained-decision approach beyond the "subset of habeas petitions

where there is no reasoned decision from any state court," concluding that "[t]here

is no basis in [§ 2254(d)] or *Richter* for two divergent analytical modes—one when

there is no previous reasoned decision below and another for when there is."[10]

Maj. Op. at 16.  I disagree.

The majority's extension of *Richter*'s unexplained-decision approach to all

summary state court decisions creates tension with the text and structure of

§ 2254(d).  Congress structured § 2254(d) to provide for two distinct bases, set

forth in separate subsections, for piercing AEDPA deference when a state court

decision is (1) contrary to or an unreasonable application of clearly established

federal law or (2) based on an unreasonable determination of the facts.  *See*

---

[10] Nothing in § 2254(d) or the case law interpreting it supports the majority's position that all summary state appellate court decisions must be reviewed in the same way, regardless of whether there was a reasoned decision from a lower court.  Indeed, the majority's emphasis on the need for a uniform approach ignores that the Supreme Court has already applied two distinct analytical modes for applying § 2254(d)'s standard.

28 U.S.C. § 2254(d)(1), (2); *see also Rice v. Collins*, 546 U.S. 333, 342 (2006)

("The question whether a state court errs in determining the facts is a different

question from whether it errs in applying the law."). If a federal habeas court

limits its review to the summary decision from the Georgia Supreme Court, it may

be able to determine that, based on the record and state of the law, the Georgia

Supreme Court's decision was unreasonable. But it will be unable to determine

whether the decision was unreasonable because the state court's analysis was

(1) contrary to or an unreasonable application of law or (2) based on an

unreasonable determination of the facts. Assume, for example, that a summary

denial is issued in a case alleging ineffective assistance of counsel based on the

failure to investigate potential mitigation evidence. The Georgia Supreme Court's

summary denial may have been based on an erroneous factual finding that counsel

did investigate mitigation evidence or, alternatively, the denial may have been

based on a correct determination of fact but a misapplication of Supreme Court

precedent like *Wiggins*, 539 U.S. 510, or *Rompilla v. Beard*, 545 U.S. 374 (2005).

The federal habeas court would have no way to know which it was.

    I acknowledge that in *Richter* the Supreme Court implicitly accepted that

federal habeas courts may blur the distinction between § 2254(d)(1) and (2) when

reviewing a summary state court decision if there was no reasoned decision from

*any* state court. But given the inherent tension between *Richter* and the structure of

§ 2254(d), *Richter*'s unexplained-decision approach should not be extended to apply when there is a reasoned decision from a state court.

Although Justice Kennedy did not address in *Richter* the approach that federal habeas courts should apply to review a summary state appellate court decision when there is a reasoned decision from a lower court, his opinion in *Moore* implicitly answered this question and supports limiting the unexplained-decision approach to cases where no reasoned state court decision exists. Put another way, *Moore* shows that the approach a federal habeas court takes to review a state appellate court's summary decision turns on whether the lower state court rendered a reasoned decision. After all, in *Moore*, the Supreme Court looked through the state appellate court's summary decision on the merits to whether the lower court had given reasons for denying the petitioner's claim.

After pleading no contest to a felony murder charge, Moore sought a writ of habeas corpus in Oregon state trial court, alleging he had been denied effective assistance of counsel when his attorney failed to file a motion to suppress his confession. 562 U.S. at 119. The state habeas trial court held an evidentiary hearing and denied Moore's habeas claim on the ground that it would have been fruitless for his counsel to file a motion to suppress in light of his other admissible

confessions. *Id.* at 119-20. The Oregon Court of Appeals "affirmed without opinion." *Moore v. Palmateer*, 26 P.3d 191 (Or. Ct. App. 2001).[11]

Moore next filed in federal court a petition for a writ of habeas corpus claiming ineffective assistance of counsel. *Moore*, 562 U.S. at 120. After the district court denied relief and the Ninth Circuit reversed, the United States Supreme Court considered whether under § 2254(d) it was required to defer to the last state court decision on the merits, which was the summary decision of the Oregon Court of Appeals.[12] Although the Supreme Court never explicitly stated that it was looking through, its discussion of the content of the state trial court's decision shows that it looked through the Oregon Court of Appeals's summary decision. Indeed, the Supreme Court quoted directly from the state trial court's decision, showing that it treated the appellate court's summary denial as adopting that decision. *See id.* at 123 ("Finding that any 'motion to suppress would have been fruitless,' the state postconviction court concluded that Moore had not received ineffective assistance of counsel." (quoting state trial court decision)). The Supreme Court's focus on the state trial court's reasoning demonstrates that when the Supreme Court reviews a state appellate court's summary decision, it

---

[11] The Oregon Supreme Court then denied the petitioner's request for discretionary (certiorari-like) review. *Moore v. Palmateer*, 30 P.3d 1184 (Or. 2001).

[12] Under Oregon law, the Oregon Court of Appeals's summary affirmance was a decision on the merits. *See* Or. Stat. § 34.710 (providing petitioner the right to appeal a trial court judgment refusing to allow a habeas writ).

presumes that the summary decision adopted the lower court's reasons for rejecting the claim.

In *Moore*, the state trial court's rationale was indeterminate, though, because its decision "did not specify" whether it denied relief "because there was no deficient performance under *Strickland* or because Moore suffered no *Strickland* prejudice, or both." *Id.* Because the trial court—and via the look-through presumption the Oregon Court of Appeals—inadequately identified the basis on which the petitioner's claim failed and in effect rendered an unexplained decision, the Supreme Court ultimately applied the unexplained-decision approach to review the state court's decision. *Id.* If, as the majority contends, the United States Supreme Court was not looking through, the Supreme Court would have considered only the Oregon Court of Appeals's summary decision and would have had no reason to explain why the state trial court's reasoning was indeterminate.

Again, I concede that neither *Ylst* nor *Richter* expressly answers the question of whether we should look through a state appellate court's summary decision for purposes of deciding whether that decision is entitled to deference under § 2254(d). But when that very scenario came before the Supreme Court in *Moore*—authored by Justice Kennedy and issued on the very same day as his opinion in *Richter*—the Court implicitly applied a look-through presumption to try to ascertain the reasoning behind the Oregon Court of Appeals's summary decision. *Moore* should

70

guide our analysis here: it demonstrates that federal habeas courts should

(1) presume that the state appellate court adopted the lower court's reasoning,

(2) identify the actual reasoning set forth in the lower court's decision, and then

(3) apply the reasoned-decision approach to determine whether those reasons are

entitled to deference under § 2254(d).

> c. Justice Ginsburg's Special Concurrence in *Hittson v. GDCP* Explains that We Should Look Through.

After *Moore*, Justice Ginsburg wrote an opinion specially concurring in the

denial of certiorari in *Hittson* to make clear that we should look through. Post-

*Richter*, in *Hittson*, a Georgia death row inmate sought certiorari after our Court

affirmed the denial of his federal habeas petition. Our Court refused to look

through the Georgia Supreme Court's summary decision denying a certificate of

probable cause and instead reviewed the Georgia Supreme Court's decision using

the unexplained-decision approach. *Hittson v. GDCP Warden*, 759 F.3d 1210,

1232 n.25 (11th Cir. 2014), *cert. denied sub nom. Hittson v. Chatman*, 135 S. Ct.

2126 (2015). Although the Supreme Court denied certiorari, Justice Ginsburg, in a

concurrence joined by Justice Kagan, explained that *Richter* did not require federal

habeas courts to "hypothesize reasons that might have supported" the Georgia

Supreme Court's unexplained order because there was a reasoned decision from a

lower court, meaning the state court's "reasons can be ascertained." *Hittson*,

135 S. Ct. at 2127-28 (Ginsburg, J., concurring in denial of certiorari).[13]  Of course, Justice Ginsburg's concurrence is not binding on us.  But it nevertheless should not be ignored:  it both reflects the view of at least two justices on the question before us and correctly explains why we should look through here.

Importantly, Justice Ginsburg's concurrence in *Hittson* was issued the same week that the Supreme Court in *Brumfield* affirmed that *Richter*'s unexplained-decision approach applies only when there is no reasoned decision from any state court.  These cases taken together show the majority is wrong to reject a look-through presumption and extend the unexplained-decision approach beyond the particular scenario that the Supreme Court faced in *Richter*—that is, when there is no reasoned decision from *any* state court rejecting the petitioner's claim.[14]

d.  The Majority Opinion Creates a Circuit Split.

The majority contends *Richter* dictates that we should not look through, but no other circuit has adopted its position.  Instead, we are the only circuit—out of

---

[13] Although Justice Ginsburg disagreed with our Court's rejection of the look-through presumption, she ultimately concurred in the denial of Mr. Hittson's petition because the state trial court's reasoning was entitled to deference under § 2254(d).  *See Hittson*, 135 S. Ct. at 2128 ("I am convinced that the Eleventh Circuit would have reached the same conclusion had it properly applied *Ylst*.").

[14] Indeed, the combination of the *Hittson* concurrence and *Brumfield* caused the Georgia Attorney General to change his position in this case because "[i]t simply does not seem to be the better choice to refuse to look at the last reasons given by a state court in deciding a claim and [*Richter*] provides no language suggesting that the last *reasoned* opinion should not be looked to for federal habeas review."  Appellee Br. at 18.  Although this concession certainly does not bind us, it is telling that Georgia's Attorney General changed his position even though the result would be that petitioners face a lighter, and the state a correspondingly heavier, burden on federal review of summary denials of habeas relief.

three to confront the issue—to hold that federal habeas courts should not look through to find the reasons a state appellate court denied the petitioner's claims on the merits and should instead apply the unexplained-decision approach whenever a state court renders a summary decision, even when there is a reasoned decision from a lower court. *See Grueninger v. Dir., Va. Dep't of Corr.*, 813 F.3d 517, 526 (4th Cir. 2016) ("[W]e may assume that the Supreme Court of Virginia has endorsed the reasoning of the Circuit Court in denying Grueninger's claim, and it is that reasoning that we are to evaluate against the deferential standards of § 2254(d)."); *Cannedy v. Adams*, 706 F.3d 1148, 1159 (9th Cir. 2013) (explaining that "*Richter* does not change our practice of 'looking through' summary denials to the last reasoned decision—whether those denials are on the merits or denials of discretionary review" and then applying the reasoned-decision approach (footnote omitted)).[15]

The majority opinion provides no good reason for creating a circuit split. Its attack on the reasoning of the Fourth and Ninth Circuits is based on its flawed assumption that the unexplained-decision approach applies to all state court summary decisions, even where there is a reasoned decision from a lower state court. But, as explained above, *Richter* does not address whether federal habeas

---

[15] In addition, at least one other circuit has in dicta suggested that it would look through a state appellate court's summary decision on the merits to the last reasoned opinion. *See Woodfox v. Cain*, 772 F.3d 358, 359 (5th Cir. 2014) ("Under AEDPA, 'we review the last reasoned state court decision.'").

court should look through, and the majority opinion ignores that the Supreme

Court in *Moore* implicitly looked through.

## 2. Principles of Federalism and Comity Support a Look-Through Presumption.

Even if the Supreme Court had not recognized that federal habeas courts

should look through a state appellate court's summary decision when reviewing

that decision under § 2254(d), we should adopt a look-through presumption

because it best honors principles of federalism and comity. The majority and I

agree that principles of federalism and comity should guide our analysis.  We

disagree, however, about how to apply these principles here.  The majority believes

these principles compel rejection of a look-through rule, but I believe these

principles lead inescapably to the conclusion that federal habeas courts should treat

a state appellate court's summary decision as adopting the reasons given by the

lower court for denying a petitioner's claims on the merits.

I conclude that adopting a look-through presumption best serves principles

of federalism and comity for four reasons.  First, although the Georgia Supreme

Court has never stated explicitly that it agrees with the superior court's reasons for

rejecting a petitioner's claims when it renders a summary decision, there is strong

support for the inference in Georgia procedure and the Georgia Supreme Court's

practices.

74

Second, although principles of federalism and comity prohibit a federal habeas court from forcing a state court to set forth reasons why it rejected a petitioner's claim, contrary to the majority's contention looking through imposes no opinion-writing standard. This is because a state appellate court can overcome the look-through presumption by something as simple as issuing a one-sentence summary decision stating that it disagrees with the lower court's reasoning but agrees that the petitioner is not entitled to relief.

Third, looking through allows federal habeas courts to respect and give effect to the different ways that states have chosen to structure their collateral review systems. More specifically, looking through allows federal habeas courts to treat a summary state appellate court decision that is the product of a state collateral review system in which no state court has rendered a reasoned decision *differently* from a summary state appellate court decision that is the product of a state collateral review system in which a lower court has rendered a reasoned decision.

Fourth, I disagree with the majority's argument that looking through is inappropriate because federal appellate courts do not treat their summary decisions as adopting the reasoning of lower courts. Federal practice should not dictate what a state appellate court's summary decision means, particularly where, as here, there

75

is evidence that the Georgia Supreme Court implicitly adopted the lower court's reasoning.

a. Looking Through Accurately Captures What the Georgia Supreme Court Intends its Summary Decisions to Mean.

On the most basic level, the majority opinion's refusal to look through the Georgia Supreme Court's summary denial of an application for a certificate of probable cause offends principles of federalism because it results in federal courts ignoring the superior court's reasoned decision despite evidence that the Georgia Supreme Court implicitly adopted that reasoning. AEDPA leaves "primary responsibility with the state courts" for adjudicating habeas claims. *Pinholster*, 563 U.S. at 182. But the majority opinion impinges this responsibility by transforming the superior court's reasoned decision into a nullity, upsetting AEDPA's careful balance between the state and federal systems.

The majority opinion treats the superior court's decision as a nullity because the Georgia Supreme Court subsequently issued a decision denying an application for a certificate of probable cause, albeit in a summary opinion. In my view, Georgia's statutory procedures as well as the Georgia Supreme Court's practices support the conclusion that the Georgia Supreme Court's silent denial of an application for a certificate of probable cause indicates agreement with and adoption of the superior court's reasoning. This evidence comes in three forms: (1) the structure of Georgia's collateral review system; (2) the Georgia Supreme

76

Court's practice of issuing reasoned denials of certificates of probable cause when it agrees with the superior court's decision to deny relief but disagrees with the superior court's reasoning; and (3) the Georgia Supreme Court's continued use of summary denials of certificates of probable cause after the United States Supreme Court on direct review implicitly treated the decision as adopting the superior court's reasoning.

First, the way in which Georgia has set up its habeas system suggests that the Georgia Supreme Court's summary denial indicates agreement with the superior court's reasoning. Georgia law requires a petitioner to seek habeas relief in a superior court in the first instance, O.C.G.A. § 9-14-43, and mandates that the superior court issue a reasoned decision including written findings of fact and conclusions of law, *id.* § 9-14-49. The State limits the scope of appellate review, requiring petitioners to apply for a certificate of probable cause to appeal, *id.* § 9-14-52, and allowing the Georgia Supreme Court to issue a certificate of probable cause only when the petitioner has demonstrated arguable merit. *See Foster*, 136 S. Ct. at 1746 n.2. Although the Georgia Supreme Court may deny an application for a certificate of probable cause in a summary decision, the superior court must first render a reasoned decision.[16] *See* O.C.G.A. § 9-14-49.

---

[16] Other states, like Georgia, have adopted systems that permit their appellate courts to resolve appeals from denials of habeas relief in summary decisions on the merits. In Florida, habeas petitioners not sentenced to the death penalty may appeal state habeas trial court

Second, the Georgia Supreme Court's practice of issuing a reasoned denial

of an application for a certificate of probable cause when it disagrees with the

superior court's reasoning but agrees with the result further supports the conclusion

that the Georgia Supreme Court's summary denial indicates agreement with the

superior court's reasoning.  Although the Georgia Supreme Court routinely denies

applications for certificates of probable cause in summary decisions, it has

sometimes provided reasons why it denied an application when it agreed with the

result the superior court reached—that is, the denial of relief—but disagreed with

the superior court's reasons.  For example, the Georgia Supreme Court explained

in *Tollette v. Upton* that it denied an application because, although the superior

court applied the incorrect legal standard to evaluate prejudice, under the correct

standard the petitioner failed to demonstrate that his claim had arguable merit.

*Tollette v. Upton*, No. S13E1348 (Ga. Mar. 28, 2014); *see also Rivera v.*

*Humphrey*, No. S13E0063 (Ga. Sept. 9, 2013) (denying application for certificate

of probable cause even though superior court applied the wrong standard because

"after independently applying the correct legal principle to the facts as found by

the [superior] court, . . . we conclude that the Petitioner's claim is without arguable

---

decisions to Florida's intermediate appellate courts as a matter of right.  *See* Fla. R. Crim. P. 3.850(k); *Johnson v. Wainwright*, 230 So. 2d 700, 701-02 (Fla. Dist. Ct. App. 1970).  And Florida's intermediate appellate courts may summarily affirm the denial of relief.  *See, e.g.*, *Shelton v. Sec'y Dep't of Corr.*, 691 F.3d 1348, 1353 (11th Cir. 2012).  Likewise, Oregon appellate courts may issue summary decisions on the merits when reviewing lower court decisions denying habeas relief.  *See Moore v. Palmateer*, 26 P.3d 191 (Or. Ct. App. 2001).

merit"); *Pace v. Schofield*, No. S08E049 (Ga. Jan. 12, 2009) (concluding that superior court's prejudice analysis was erroneous but denying application because "there is no arguable merit to the Petitioner's ineffective assistance of counsel claims").

Third, as I explain in greater detail in the next subsection, the United States Supreme Court has on direct review treated the Georgia Supreme Court's summary denial of an application for a certificate of probable cause as adopting the superior court's reasoning.[17] Despite knowing that, at least on direct review, the United States Supreme Court will treat its summary denial as adopting the superior court's reasoning, the Georgia Supreme Court has continued to deny applications for certificates of probable cause in summary orders. The continued practice shows that the Georgia Supreme Court intends its silence to indicate consent. Put another way, the Georgia Supreme Court's practice supports the conclusion that it

---

[17] Certainly, the same principles do not always apply on the Supreme Court's direct review of state habeas decisions under 28 U.S.C. § 1257(a) and federal habeas review of state court decisions under AEDPA. But the majority presents no compelling reason why the meaning of a Georgia Supreme Court decision should vary between the two contexts. Despite the differences between direct and collateral review, the Supreme Court has applied principles from direct review cases to federal habeas cases when an issue is "common to both direct and habeas review." *Harris v. Reed*, 489 U.S. 255, 263 (1989). Moreover, the majority itself recognizes that principles from direct review cases can apply to federal habeas review under AEDPA. *See* Maj. Op. at 9 (looking to *Foster*, a direct review case addressing whether the summary denial of a certificate of probable cause is a decision on the merits subject to review on a writ of certiorari, to understand whether the same decision also qualifies as an adjudication on the merits under § 2254(d)).

79

"generally . . . affirm[s] without further discussion when [it] agree[s], not when [it] disagree[s], with the reasons given below." *Ylst*, 501 U.S. at 804.

I agree with the majority that under AEDPA we must give state court decisions "the benefit of the doubt." Maj. Op. at 24 (quoting *Renico v. Lett*, 559 U.S 766, 773 (2010)). But I do not believe that this principle is in any way inconsistent with the presumption that the Georgia Supreme Court agrees with the superior court's reasoning when it issues a summary denial of a certificate of probable cause.

b. Looking Through Imposes No Opinion-Writing Standard.

The majority attacks the look-through presumption as inconsistent with federalism because it "impose[s] opinion-writing standards on state appellate courts." *Id.* at 22. It certainly is true that the Supreme Court has expressed concern about federal habeas courts using AEDPA to impose opinion-writing standards on state courts. *See Johnson v. Williams*, 133 S. Ct. 1088, 1095 (2013). But I disagree that looking through would pressure the Georgia Supreme Court to "provide a statement of reasons" when it disagrees with the superior court's reasons for denying relief to negate a look-through presumption. Maj. Op. at 22. The Georgia Supreme Court could simply issue a one-line order denying an application for a certificate of probable cause that indicates agreement with the result the superior court reached but not the lower court's reasons for rejecting the

80

petitioner's claim.[18]  A federal habeas court would not look through that decision

because the presumption that the Georgia Supreme Court adopted the superior

court's reasoning would be overcome, *see Ylst*, 501 U.S. at 804, and the federal

court would then review the Georgia Supreme Court's decision under the

unexplained-decision approach.

But even if the Georgia Supreme Court chooses to explain why it denied the

petitioner's application, I cannot agree that looking through creates an undue

opinion-writing burden because on direct review under 28 U.S.C. § 1257(a) the

United States Supreme Court already presumes that the Georgia Supreme Court's

summary decisions adopt the reasoning in the lower court's decision.  As a result,

the Georgia Supreme Court presently has an incentive to state when it disagrees

with the superior court's rationale regardless of whether federal habeas courts look

through.[19]  *See Foster*, 136 S. Ct. 1737; *Sears v. Upton*, 561 U.S. 945 (2010).

In *Sears*, on direct review under § 1257(a), the United States Supreme Court

looked through the Georgia Supreme Court's summary decision denying an

---

[18] The majority contends that because the Georgia Supreme Court would have to issue this one-sentence order to overcome the look-through presumption, looking through would impose an opinion-writing standard.  I suppose that is literally correct, but any burden would be minimal, limited to a form sentence that could be used with little more trouble than the sentence that the Georgia Supreme Court most frequently uses, "it is ordered that [the application] be hereby denied."

[19] This statutory provision provides that "[f]inal judgments . . . rendered by the highest court of a State in which a decision could be had [] may be reviewed by the Supreme Court." 28 U.S.C. § 1257(a).

application for a certificate of probable cause, presuming that it denied the application for the reasons set forth in the superior court's decision. *See, e.g.*, *Sears*, 561 U.S. at 953-54 ("There are two errors in the state court's analysis of Sears' Sixth Amendment claim."). Because the superior court—and thus, implicitly the Georgia Supreme Court—improperly applied the prejudice prong in its analysis of Sears's ineffective assistance of counsel claim, the United States Supreme Court vacated and remanded for the state court to apply the proper standard. *Id.* at 946.[20]

And again in *Foster*, the Supreme Court on direct review looked through the Georgia Supreme Court's summary denial of a certificate of probable cause to the superior court's reasons for denying the petitioner's claim. A threshold issue in *Foster* was whether the Georgia Supreme Court's denial of a certificate of probable cause rested on federal or state law grounds. *Foster*, 136 S. Ct. at 1746 n.3. Even though it was reviewing the Georgia Supreme Court's decision, the United States Supreme Court referred to the superior court as "the state habeas

---

[20] Although the Supreme Court has stated that it "rarely" reviews under § 1257(a) state court decisions denying collateral relief, *Lawrence v. Florida*, 549 U.S. 327, 335 (2007), as at least one Supreme Court justice has observed, recently the Supreme Court has reviewed such decisions under § 1257(a) more frequently. *See Foster*, 136 S. Ct. at 1760-61 (Alito, J., concurring) (discussing trend of Supreme Court granting certiorari under § 1257(a) to review state court decisions denying postconviction relief). Indeed, just last term in at least four cases the Supreme Court granted review under § 1257(a) and reversed (or vacated) the state court decision denying collateral relief. *See Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016); *Foster*, 136 S. Ct. at 1755; *Wearry v. Cain*, 136 S. Ct. 1002, 1008 (2016); *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016).

court" and looked through to the superior court's analysis. *Id.* at 1745-46. The dissent in *Foster* criticized the majority for "attributing . . . [the] Superior Court's reasoning to the Supreme Court of Georgia," warning that the majority had "impose[d] an opinion-writing requirement on the States' highest courts" by forcing them to write "reasoned opinions" to avoid reversal on direct review. *Id.* at 1764-65 (Thomas, J., dissenting). Nevertheless, the majority in *Foster* looked through, implicitly rejecting the dissent's argument that the Court was imposing a forbidden opinion-writing burden.

Since *Sears*, then, the Georgia Supreme Court has been on notice that if it summarily denies an application for a certificate of probable cause, the United States Supreme Court—at least on direct review under § 1257(a)—will treat its summary decision as implicitly adopting the superior court's reasoning and will vacate its judgment if the superior court's reasoning is flawed. Accordingly, I fail to see how looking through under § 2254(d) would impose an improper opinion-writing standard.

        c. Looking Through Respects Differences in How States Have Structured Their Habeas Systems.

The majority opinion requires federal habeas courts to apply the unexplained-decision approach to review all summary state court decisions, regardless of whether the state habeas system requires a reasoned decision from a lower court. But the majority opinion's approach violates the principles of comity

and federalism that underlie AEDPA because it fails to respect differences in how the states have chosen to structure their systems. *See Younger v. Harris*, 401 U.S. 37, 44 (1971) (recognizing that comity requires "a proper respect for state functions" and "a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways"). Proper respect requires federal habeas courts to treat summary state appellate decisions that are rendered after a lower court issued a reasoned decision differently from summary state appellate court decisions when there is no reasoned decision from a lower court.

To illustrate why such summary decisions should not be treated identically, I compare the California and Georgia state collateral review systems. California, like Georgia, has structured its collateral review procedures to permit its state supreme court to issue a summary decision rejecting a petitioner's claims on the merits, but its system for reviewing habeas claims otherwise bears little resemblance to Georgia's. California law allows a petitioner to seek relief in the California Supreme Court in the first instance without requiring the California Supreme Court to issue a reasoned decision. *See Richter*, 562 U.S. at 96. Without a previous reasoned decision from any California court, it is impossible for a federal habeas court to attribute any reasons to the California Supreme Court's summary decision.

84

But, as I described above, collateral review in Georgia is markedly different. Georgia guarantees petitioners at least one reasoned decision addressing their claims. Thus, there is good reason to infer that the Georgia Supreme Court intends its summary decision to adopt the lower court's reasoning. Looking through allows federal habeas courts to give meaning and effect to these differences in how Georgia and Florida have chosen to structure their state habeas systems.

At bottom, the majority takes the position that federal habeas courts must review all summary state court decisions in one uniform way. Although the majority exalts the importance of uniformity, the majority also would have federal habeas courts draw simultaneous, inconsistent conclusions about what a single state appellate court's summary decision means. Petitioners frequently raise more than one claim in a state habeas petition, and state habeas trial courts may issue a single order addressing all of the claims. As in this case, the state habeas trial court may conclude that some of the petitioner's claims are procedurally defaulted and others fail on the merits. Or the state court may decide that a claim is procedurally defaulted and, in the alternative, fails on the merits. When a state appellate court issues a summary decision rejecting the petitioner's appeal, the majority would have the federal habeas court draw inconsistent conclusions about what the state appellate court's silence means. With respect to the procedurally defaulted claims, the majority opinion would have a federal court treat the state

85

appellate court's silence as indicating agreement with the trial court's decision to deny the claim on state law procedural grounds. *See Ylst*, 501 U.S. at 804. At the same time, with respect to the claims the state trial court addressed on the merits, the majority opinion would have the federal court reject the conclusion that the state appellate court through its silence adopted the lower court's reasoning.

I am concerned that by embracing a look-through presumption for purposes of identifying whether the state appellate court applied a procedural default but rejecting it for purposes of identifying the grounds on which the state appellate court rejected the petitioner's claims, the majority opinion fails "to afford state courts due respect" and offends principles of federalism. *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). Indeed, the majority offers no credible explanation why a federal habeas court can draw simultaneous inconsistent conclusions about the meaning of a state appellate court's summary decision. In the absence of any explanation, it could appear that federal habeas courts are reading summary state court decisions so as to impose the most onerous burden upon habeas petitioners— that is, looking through to preserve procedural defaults (and thus bar federal habeas courts from reviewing the merits of the petitioner's claims) but refusing to look through so that habeas petitioners must meet the more demanding inquiry under the unexplained-decision approach when the summary decision was on the merits.

d. Deferring to How Federal Appellate Courts Understand
Their Summary Decisions Violates Federalism Principles.

The majority contends that federal habeas courts should not adopt a look-through presumption because when federal appellate courts summarily affirm decisions from lower courts, they do not necessarily adopt the lower court's reasoning. The majority assumes that a state appellate court's summary decision carries the same meaning on federal habeas review that federal appellate courts assign to their own summary decisions. This position is unprincipled and inconsistent with federalism.

It is true that the United States Supreme Court and federal appellate courts have said that their summary affirmances do not adopt the reasoning of the lower court. The Supreme Court has explained, for example, that only what "was essential to sustain" the lower court's judgment may be read into its summary decisions. *Anderson v. Celebrezze*, 460 U.S. 780, 784 n.5 (1983); *see Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 212 n.24 (1983). This is because the Supreme Court, like all federal appellate courts, may affirm a lower court decision for any reason. As such, the meaning assigned to a federal appellate court's summary decision is limited to "the precise issues presented and necessarily decided" in the summary decision. *Anderson*, 460 U.S. at 784 n.5 (internal quotation marks omitted).

87

Because federal review of state habeas decisions is unique, however, it strikes me as inappropriate that the federal courts' practice in another context should dictate what a state appellate court's summary decision means in that state's system.  Indeed, the majority opinion cites no authority to support its assumption that federal practice should control.  The majority's assumption that federal appellate practice should control what we understand a state appellate court's summary decision to mean is flawed for at least two reasons:  (1) it is inconsistent with *Ylst*, in which the Supreme Court did not look to federal practice to understand the meaning of a state appellate court's summary affirmance and (2) at least with respect to Georgia, it offends federalism and comity given the evidence that the Georgia Supreme Court implicitly adopts a superior court's reasoning when it summary denies an application for a certificate of probable cause.

First, in *Ylst*, despite suggesting that a state appellate court's summary orders "are not meant to convey *anything* as to the reason for the decision," the Supreme Court treated a state appellate court's summary decision as adopting the grounds in the last reasoned state court decision.  *Ylst*, 501 U.S. at 803-04 (emphasis in original).  The Supreme Court thus ascribed far greater meaning to a state court's summary affirmance than federal courts give their own summary affirmances.  Significantly, though, the Supreme Court found it unnecessary to mention that it was treating a summary state appellate court decision differently from the way

88

federal appellate courts treat their own summary decisions. To me this demonstrates that we are not constrained by how federal courts treat their own summary decisions when interpreting what a state appellate court's summary decision means.[21]

Second, as I explained above, decisions from the Georgia Supreme Court demonstrate that it issues summary denials when it agrees, not disagrees, with the superior court's reasons for denying the petitioner's claims. The majority's reliance on how federal courts understand their summary affirmances and corresponding refusal to consider what Georgia's collateral review system and the Georgia Supreme Court's practices tell us about the meaning of its summary decisions fail to afford due respect to principles of comity and federalism. *See Thompson v. Bell*, 580 F.3d 423, 442 (6th Cir. 2009) (recognizing it would do a disservice to comity to ignore the highest court of a state's views on its laws).[22] I

---

[21] The majority tries to sidestep this issue by contending that under *Ylst* a summary affirmance means only that the state appellate court's decision rested "on the same general ground—that is, a procedural ground or on the merits—as the judgment under review." Maj. Op. at 17. The problem is that *Ylst* went further than treating a summary affirmance as simply indicating an agreement with the general ground reached by the lower court. The Supreme Court explained that a summary affirmance indicates agreement with the lower court's reasons: "silence implies consent . . . and courts generally behave accordingly, affirming without further discussion when they agree . . . with the reasons given below." *Ylst*, 501 U.S. at 804; *see also Hinojosa*, 136 S. Ct. at 1606 (holding *Ylst* presumption was overcome when there was strong evidence that state appellate court did not agree with specific reason given by lower court).

[22] The majority points out that Justice Ginsburg concurred in the denial of certiorari in *Hittson* because she agreed with the result reached by our Court but not the reasoning, concluding that the Georgia Supreme Court likewise may deny an application for a certificate of probable cause in a summary order even though it disagrees with the lower court's reasoning.

89

find it is curious that the majority criticizes the look-through presumption as contradicting federalism principles when its position rests on the unsupported assumption that summary decisions from state appellate courts must carry the same meaning that federal appellate courts assign to their own summary decisions.[23]

### III.   CONCLUSION

I fear that the majority opinion's application of the unexplained-decision approach to review a summary decision of the Georgia Supreme Court will deprive petitioners of federal habeas relief, eroding the guarantees of the Great Writ.  I

---

Implicit in this argument is the idea that federal habeas courts should look to how the United States Supreme Court applies its *discretionary* standard for reviewing certiorari petitions, *see* Supreme Ct. R. 10 ("Review on a writ of certiorari is not a matter of right, but of judicial discretion."), to understand what the Georgia Supreme Court's summary denial of a certificate of probable cause means, even though the Georgia Supreme Court's decision is on the merits.  I fail to see why the fact that the United States Supreme Court may in its discretion deny a certiorari petition for any reason indicates that the Georgia Supreme Court summarily denies applications for certificates of probable cause for reasons other than those given by the court below, especially in light of the Georgia Supreme Court's practice of issuing reasoned decisions when it denies relief for a reason other than the one stated by the superior court.

[23] The majority also suggests that a federal habeas court that looks through violates principles of federalism because it improperly "review[s] the entire process by which a prisoner's federal claim was adjudicated" instead of determining whether the last state-court decision is entitled to deference.  Maj. Op. at 26.  This suggestion relies on the assertion that looking through requires a federal habeas court to review the entire state court proceedings because the federal court would have to consider the lower state court decision and briefing before the state appellate court to determine whether the look-through presumption is overcome.  But I see no problem because a federal habeas court would look to briefing before the state appellate court only as part of the threshold inquiry to identify the *content* of the state court decision.  The Supreme Court has recognized that a federal habeas court reviewing a state court decision has a "duty . . . to determine the scope of the relevant state court judgment." *Coleman v. Thompson*, 501 U.S. 722, 739 (1991).  Importantly, the federal habeas court would not use the state court briefing to determine whether the state appellate court's summary decision, which implicitly adopted the arguments or theories set forth in the lower court's reasoned decision, was entitled to deference.

90

cannot agree that to pierce AEDPA deference a habeas petitioner must show that the Georgia Supreme Court's denial of an application for a certificate of probable cause was unreasonable. I believe that federal habeas courts should presume that the state appellate court's summary decision under review adopted the lower court's reasons for rejecting the petitioner's claims. When the presumption has not been overcome by strong evidence, a federal habeas court should review whether the arguments or theories in the superior court's decision are entitled to deference under the reasoned-decision approach.

The majority's decision today requires federal habeas courts under § 2254(d) to defer to a summary decision of the Georgia Supreme Court so long as a federal court can conjure up any ground upon which relief reasonably could have been denied, even when the superior court's reasoning was contrary to clearly established law. To reach this result, the majority ignores United States Supreme Court cases that direct us to presume that the Georgia Supreme Court silently adopted the superior court's reasoning. And the majority ignores the evidence that the Georgia Supreme Court intends and understands its summary denials to mean that it agrees with the superior court's reasoning. Instead, the majority relies on the unsupported assumption that federal cases addressing the meaning federal appellate courts assign their summary decisions dictate what the Georgia Supreme Court's summary decisions mean. Rather than working the careful balance

between the state and federal system that AEDPA and our Constitution require, the

majority opinion does the very opposite.  I therefore dissent.